KENNON, Judge.
This is a compensation case in which Mack Hayes was awarded a judgment of $30 a week, not to exceed four hundred weeks. Hayes alleged that on March 31, 1949, while engaged as a workman in the logging operations of the defendant, and while lifting some 'heavy iron tongs as required by his duties, he accidentally sustained an indirect inguinal hernia.
Defendant in answer admitted the hazardous nature of its business, and that plaintiff was its employee on the day of the alleged accident, but denied that he was accidentally injured, setting forth that, on the day following the alleged accident, plaintiff told his foreman that his stomach hurt and that he was sick, and, after being excused from the job, reported to the Fraser hospital in Many, Louisiana, where he was found to be ill with a stomach abscess ; that on April 18th plaintiff returned to his work and performed the same duties he was doing prior to 'his going to the hospital and continued to so work until he voluntarily terminated his employment with defendant on January 26, 1950. The answer further admitted that after August 15, 1949, plaintiff did inform defendant’s foreman, who assumed his position on August 15, 1949, that he was unable to handle the big tongs and was habitually excused from performing this heavy task. The answer specifically denied that plaintiff sustained any inguinal hernia or other injury while in the course of his employment, and prayed for judgment rejecting his demands.
From a judgment of the District Court granting plaintiff the maximum compensation for a period not exceeding four hundred weeks, less credit for the time plaintiff received wages from defendant during the time he worked following the alleged accident, defendant prosecutes the present suspensive appeal.
Plaintiff is forty-six years of age and has lived all of his life in Sabine Parish, where he has worked at various jobs, mostly in connection with the logging industry. He had worked for defendant in years past, taking up his last employment with the company in June of 1944. . His work had been satisfactory during the period of almost five years preceding the date of his present accident or sickness.
Plaintiff testified that on March 31, 1949, he was lifting some heavy tongs weighing sixty-five to one hundred pounds, while a fellow workman, Cal Smith, was pris-ing on a log, he “tonged it up — caused it to go up higher than my head, when I went to straighten up, I told Cal, T believe I hurt myself.’ He said, ‘That’s a good way.’ ”
*857 The assistant woods foreman for defendant testified that plaintiff came to him in the woods on the morning following the alleged accident and complained that he was sick and he advised 'him “to go in;” that plaintiff returned later in the month to the same job of loading and skidding logs. This foreman, Mr. S. M. Tynes, left this position in August and was succeeded by a new foreman, Mr. E. N. Teasley. Mr. Tynes testified that Hayes was a good workman during the three year period Tynes supervised his work in the woods. Mr. Teasley testified that plaintiff told him he had been ruptured and that the tongs were too heavy for him to hang on the tractor and asked to be put on lighter work, adding that if the foreman “needed his help, he would help all he could.”
Cal Smith, as a witness, testified that he and plaintiff were right together when Hayes complained of being hurt. Based on the testimony of plaintiff and his wife and the condition he was found to be in the next morning by defense witness, Dr. S. F. Fraser, we find that during the night ■of March 31st he suffered considerable internal pain; that after he reported to work the following morning and did in •some measure at least carry on his duties for several hours, he told his foreman he was sick and was carried by a fellow workman first to his home and later to the sanitarium in Many, where he was treated for .a period of six days by Dr. Fraser. Dr. Fraser found him with a temperature of 103° and complaining of an acute pain in the abdomen, which he described as an acute abdominal infection and a phleg-monous abscess of the abdomen. When asked whether plaintiff’s injury was connected with his work, or whether plaintiff was suffering from a hernia at the time he gave the following answers:
“Well, I can’t see the connection between physical work and abscess formation. That’s a decision — -I think it is possible for a person to have a blow or strain himself' and cause a rupture of a weakened spot.”
“I don’t recall any history to cause me to have that opinion. He was seriously ill, had an acute abdominal infection, I didrít check him for possibility of hernia. He had an acute infection of abdomen. He was quite tender over the lower area.” (Emphasis added.)
After five or six days in the sanitarium and less than two weeks at home, Hayes returned to his job. Dr. Fraser testified that he advised him “to do light work.”
Dr. Fraser testified that his card records showed that he had examined Mack Hayes prior to his employment with defendant company in 1944 and found him “O. K.” for work.
Dr. Fraser examined plaintiff again in April, 19S0, some sixty days prior to the trial, and testified that, at that time he found him suffering from the bi-lateral inguinal hernias described in the petition, and that he thought plaintiff should be subjected to surgery to repair his condition, that he should not do any work that would cause a strain, and that at the time of the trial, he “wouldn’t pass him (Hayes) for public work.”
Dr. Loyd Murdock, who operates the Sabine Clinic at Zwolle, Louisiana, testified that about June, 1949, he examined plaintiff and found a fully developed right inguinal hernia and an enlarged inguinal ring on the left side. When -asked if such a condition could be caused by an undue strain such as lifting, he replied, “That’s the main way they are caused.” He also testified that plaintiff was unfit for heavy work like he had been accustomed to doing.
It was conclusively established that plaintiff, at the time of the trial, was suffering from a bi-lateral inguinal hernia condition that made him totally disabled within the meaning of the compensation act. LSA-RS 23:1021 et seq. The District Court concluded that this condition was the result of his employment, which included heavy lifting and straining labor. The testimony leaves the question a close one as to whether plaintiff’s hernia developed on the afternoon of March 31, 1949.
When plaintiff consulted Dr. Murdock his complaint was that he had pain in' his stomach. Dr. Murdóck checked him and found the abdominal infection gone, but did find the right inguinal hernia. Of *858 course, it is possible that this hernia could have developed between the time plaintiff left the Many hospital and the time he consulted Dr. Murdock. However, in view of the fact that the pain and discomfort which existed in plaintiff’s abdomen at the time he was in the hospital did not cease with the curing of the acute abscess condition, a more logical explanation is that plaintiff at the time he was admitted to the Many hospital was suffering from both hernia and abscess. Dr. Fraser’s failure to examine for or discover the hernia is that plaintiff’s high fever was an obvious index to the abscess which did explain his abdominal suffering. Because of this situation, no detailed examination for hernia or other additional complication was indicated.
Plaintiff, at the time of first examination by Dr. Murdock in the early summer of 1949, had a fully developed right inguinal hernia and on the left side an enlarged inguinal ring with no protrusion on the left side. Plaintiff continued his employment with defendant until January IS, 1950, when his condition became such that he could not perform his duties even though he had his foreman’s consent to avoid the heavier tasks. A second examination by Dr. Murdock shortly before the trial revealed that the enlarged inguinal ring on the left side had developed into a full hernia. There is no evidence that plaintiff engaged in any activity other than his job, and we conclude that plaintiff has established by a preponderance of the evidence that these hernias were the result of the strenuous efforts put forth by him in the performance of the duties of his employment. It is true that a preexisting congenital defect, namely, the enlarged inguinal ring, was a contributing factor. Nevertheless, under the compensation statute and the jurisprudence of this state, this fact' does not defeat recovery. Hogan v. T. J. Moss Tie Company et al., 210 La. 362, 27 So.2d 131, 133.
Plaintiff’s petition sets forth that his disability came as the result of an accident happening on the 31st day of March, 1949. The proof is definite that the hernia on the left side did not develop until after his examination by Dr. Murdock in the summer of 1949, and the evidence leaves some doubt as to the exact date of the original development of the hernia on the right side. However, the proof is sufficient that plaintiff had no hprnia at the time he entered the employment with defendant, and that he was permanently and totally disabled as the result of two hernias at the time he ended his employment in January, 1950. We also find that there was no evidence or even indication that the development of these hernias came in any other manner than in the course of his employment with the defendant.
In this case we feel justified in upholding the District Court’s award of compensation as being in accordance with the well recognized Louisiana rule set forth in the following paragraph from the above cited Supreme Court case of Hogan v. T. J. Moss Tie Company: “The pleadings in compensation cases must be liberally construed and compensation should be granted whenever the evidence justifies it in order to carry out the purpose of the compensation statute.”
In answer defendant admitted that plaintiff earned an average wage of $37 per week. Plaintiff’s testimony at the trial was that he worked forty hours per week and what was under forty hours was made up the following week; that his daily pay was $7.40, with time and a half for overtime, and that he worked from four to six days a week. Taking five as the average number of days worked each week, and $7.40 as the average earning per day, the average weekly wage testified to by plaintiff would be $37, which is identical with the admission in defendant’s answer. Sixty-five per cent, of $37 amounts to $24.05.
For the reasons assigned, the judgment appealed from is amended by reducing the amount of weekly compensation awarded to $24.05, and as amended, the judgment is affirmed, with costs.