AYRES, Judge.
The defendant, as the workman's compensation insurance carrier of Dewey Miller Contracting Company, has appealed from a judgment awarding plaintiff, as a former employee thereof, compensation as for total and permanent disability.
There are two issues presented in this case, first, whether the plaintiff sustained accidental injuries during the course and scope of his employment, and second, if he sustained such accidental injuries, whether or not he is disabled to do work of a reasonably similar'character.
Plaintiff alleged that during the course of his employment as a truck driver and in the handling of pipe and barrels of materials for his employer in laying a gas pipe line in Sabine Parish, he.suffered an accident July 8, 1952, in which he was seriously and permanently injured,- causing an inguinal hernia.
According to testimony in the record on the occasion involved, plaintiff, with one K. W. Carter,’was sent to Many, Louisiana, each with a truck, to load thereon and transport material in 55-gallon drums, the loading of which was by means of a winch, which operation, however, necessitated that the drums, after being placed on the truck, be headed up by hand. After plaintiff had strained and lifted on one of these drums, he lost his grasp, it began to roll, and he fell, causing the injury complained of. At the time he experienced the usual symptoms accompanying a hernia,1 such as nausea, sickness and pain. He sat down for a few minutes and reported the accident and injury to Carter,, who,, he ’ says, saw the accident and saw him fall. Carter, however, could not be located by the plaintiff at the time of the trial and his testimony was, therefore, not taken.
Plaintiff testified he reported this accident to the defendant and his foreman ánd to several others, including his wife and father. He says, too, that the Company was short-handed and needed his services and that the foreman insisted on his remaining to help them. out,. which he did *70 for approximately two weeks, during which time he performed his services with more or less pain and discomfort. Upon receiving a message from his wife that one of his children was sick, he left immediately for his residence at Amite, Louisiana, where, on reaching home he informed his wife and father of the accident and injury sustained by him.
Plaintiff had sustained a hernia previous to this time on March 15, 1951. That was repaired by Dr. Robert H. Brumfield of McCorab, Mississippi. That operation was not entirely successful and plaintiff underwent a second operation by Dr. Brum-field to repair the additional damage. However, before entering on this employment but after having contracted or agreed thereto, plaintiff was again examined by his physician and surgeon and given a discharge from further treatment and a certificate of his ability to work.
The only compensation drawn by plaintiff was while he was off, occasioned by his aforesaid operations and his recovery therefrom.
Plaintiff’s employer and foreman denied that he had at any time reported any accident or injury to them. They even denied getting the doctor’s certificate or having any notice or knowledge of a prior hernia and his operations. Dewey Miller testified that when plaintiff went to work for him, he required a physical examination, and in view of this requirement, it is inconceivable that he, his foreman or office manager did not receive the certificate or obtain some information relative to plaintiff’s physical ability to work.
That the release was obtained from the doctor in McComb is confirmed by the testimony of Butch Miller, who testified that plaintiff hitchhiked a ride with him for the purpose of getting a release from the doctor before going to work. This witness testified that he knew about plaintiff’s prior hernias and operations and that was understood generally.
Defendant and its assured made no attempt to locate the witness, K. W. Carter, who was a former employee of the assured. The trial court was convinced of plaintiff’s efforts and inability to secure his presence and observed that the employer was probably in a better position to have obtained his testimony.
Plaintiff is corroborated in his statements that he reported his accident and injury to his wife and father by their testimony of such reports, and particularly by the father, who said that his son upon arrival told him that he had torn his side open. Through friendship, plaintiff’s father secured for him a shop foreman’s position, a desk job, with the Ace Freight Lines, where he earned a fair wage but which position he could not have secured if a physical examination had 'been required as a prerequisite to employment. -
 From a consideration of the testimony as a whole, we find no manifest error in the trial court’s finding that plaintiff sustained accidental injuries. As to plaintiff’s present condition, the trial court’s findings, with which we agree, are stated as follows:
“Dr. Clinton H. Sharp who examined plaintiff for the first time on October 22, 1952, ‘found a right inguinal hernia, rather large, which could not be diagnosed as either direct or indirect, it was so extensive’. This witness testified that plaintiff would be disabled from doing heavy work, and would probably only be able to do the lightest work; that he could not perform the duties of a truck driver regularly without medical care and that even driving a truck for short periods would be accompanied by pain and discomfort. This witness was of the opinion that because of previous attempts to repair the hernia the tissues were probably so broken down that successful repair at this time would be doubtful; that upon one examination of plaintiff the hernia was so extensive that the mass was as large as an orange. This witness’ impression of plaintiff was that he was truthful and very straightforward about his statements.
*71 “Dr. Robert H. Brumfield of Mc-Comb, Mississippi, who specializes in surgery, operated on Luther Martin ■November 12th, 1951, and on January 10th, 1952, did repair work on a small area, after which he was discharged and released to resume work on March 3, 1952. On November 27, 1953, Dr. Brumfield examined plaintiff and testified as follows as to his present condition:
“ ‘Q. What condition do you find him in at the present time ? A. I find that he has a large indirect inguinal hernia on the same side as previously operated on. It comes into the inguinal canal about two and a half or three inches above the site of the previous hernia.
“ ‘Q. What is your opinion, doctor, as to the cause of his present condition? A. The cause of the hernia, I don’t know, the cause of this hernia. He has a very large hernia that could come from a number of factors. It could come from stress and strain, any type of injury. It is not a re-occurrence of the other hernia if that is what you mean.
‘“Q. It is not? A. No this is separate.
“ ‘Q. An entirely new hernia ? A. It comes through at a different point, yes.
“ ‘Q. You say it could be caused from a number of things such as stress and strain or an injury? A. Correct.
“ ‘Q. What is your opinion, or do you have an opinion, as to what could have caused it. What did cause it, do you know anything about what did cause it? A. No, I know one thing, he has a whopper.
“ 'Q. It is a very large hernia ? A. Yes.
“ ‘Q. Could a hernia of that kind have been caused by just anything except something specially straining, some special strain — could it have happened without the occurrence of an injury of some kind? A. I don’t believe it could. In view of the fact that at the time I operated on him for the direct inguinal hernia there was no indication of any weakness in the canal above that point.
“ ‘Q. The hernia he has now, is that a congenital hernia? A. No, it is too large for a congenital hernia. It would take a congenital hernia probably several years to get that much intestine down, if it ever did. A congenital hernia, he would have had that when he was a child. It would have showed up years ago.
“ ‘Q. Did he have any indication of the present hernia at the time you repaired the first hernia? A. Definitely not.
“ ‘Q. In his present condition is it your opinion that he could, in his present condition, do any strenuous, physical labor? A. He might do the land of work I do but not the kind of work he does. When he pulls his truss off he gets so much bowel you don’t see why he doesn’t get intestinal construction, commonly called locked bowels.
“ ‘Q. He wears a truss now ? A. Yes.
“ ‘Q. Do you think it would pain him to drive a truck, a large diesel truck, for any length of time? A. I think any kind of physical activity would give him pain, driving a truck, lifting, walking, working.
“ ‘Q. Any kind of physical exercise, even walking, would give him pain? A. Yes, anything secondary.
“‘Q. Just standing up? A. Yes, because it comes down even below the truss when he stands. It doesn’t hold it completely.
*72 “ ‘Q. Do you think he could pass a physical examination that would be’ required for truck drivers under the Interstate Commerce Commission? A. I don’t' know what their requirements are but he couldn’t pass any examination that I have made for 'any company.’
"Thus we see from the uncontradicted testimony of both Dr. Sharp and Dr. Brum-field that plaintiff is now totally disabled to do manual labor without pain and discomfort, and that his condition is so severe that there is doubt as to whether an operation will correct the disabled condition to the extent that he'will be able to perform manual labor.”
The proof is sufficient that plaintiff had no hernia at the time he entered the employment wherein he claims to have sustained a hernia. His testimony as to his discharge from further treatment and his ability, to do work was fully corroborated and it is abundantly clear: that he is now totally and permanently disabled- from performing work of the same or similar character. There was -no evidence or even indication this hernia ■ developed in any other manner than as claimed- by plaintiff and in the course of his employment. In this • connection, see Hayes v. Louisiana Long Leaf Lumber Co., La.App., 51 So.2d 855; Hogan v. T. J. Moss Tie Co., 210 La. 362, 27 So.2d 131. The evidence leaves no doubt that plaintiff could not pass any physical examination for industrial work and that condition is in all probability permanent and could not be successfully remedied by surgery. We, therefore, are of the opinion that plaintiff is totally and permanently disabled to do work of the same or similar character that he was performing at the time of his injury and that such disability was caused by accidental injuries sustained by him in the course and scope of his employment.,
We-find no manifest error in the judgment appealed from and it..is, therefore, affirmed at appellant’s costs.