PER CURIAM.
In this, a workmen’s compensation suit, the petitioner, Johnny Stafford, seeks judgment against North Louisiana Sanitarium, Inc., its insurer, United States Fidelity and Guaranty Company, and Peachy R. Gilmer, M. D., doing business as Gilmer Hospital. The last na'med defendant filed an exception of no cause or right of action which was sustained by the trial court, and from said judgment the petitioner has appealed.
The sole question presented to this court is the correctness of the judgment sustaining the exception and dismissing plaintiff’s action as to the defendant, Peachy R. Gil-mer. In support of the exception, counsel for Gilmer argues that the petition does not show there was any employer-employee relationship between Gilmer and Stafford, and further, in the alternative, that if such employment is found to have been alleged, it was not hazardous within the scope of the Workmen’s Compensation Statute, LSA-R.S. 23:1021 et seq. Counsel for appellant contends that under the allegations of the petition Stafford was at the time of his injury a borrowed or loaned employee to Gil-mer by his regular employer, North Louisiana Sanitarium, Inc.
In the consideration of actions brought in behalf of a claimant under the Workmen’s Compensation Act, the courts of this state are enjoined to accord a liberal construction of the pleadings in favor of the petitioner and when a legal claim is indicated, the claim will not be thrown out for technical reasons, or for want of details by the pleader. Hayes v. Louisiana Long Leaf Lumber Company, La.App.1951, 51 So.2d 855. Consistent with the foregoing statement, however, a petitioner is directed under LSA-R.S. 23:1311 of the Workmen’s Compensation Act to allege all facts which are made conditions under which compensation may be granted. Thus, where a petition does not evidence in some way that the petitioner would be entitled to relief under evidence in support of the allegations thereof, it should be rejected. Wilkie v. Langlois, La.App.1935, 164 So. 434; Garrett v. Opelousas Cotton Oil Mill Company, Inc., La.App.1936, 167 So. 854.
The petitioner alleges that on August 18, 1955, while employed by the ¡North Louisiana Sanitarium, Inc. as a porter and an orderly, he was directed to go to the Gilmer Hospital for the purpose of lifting a heavy patient from the floor where she had fallen from a bed, and while he was so engaged he experienced a back injury which is the subject matter of his compensation claim. The pertinent articles of the petition which have reference to the nature of his employment, if any, by Gilmer, are as follows:
“That on or about August 18, 1955, at about 3 o’clock a. m., while acting in the course and within the scope of his employment as a porter and an orderly, as aforesaid, and at the direction and upon orders of the night supervisor of nurses *524 and the supply room nurse, your petitioner went to the Gilmer Hospital, situated next to and adjoining the said North Louisiana Sanitarium, Inc., for the purpose of lifting a heavy female patient of said Gilmer Hospital from the floor where she had fallen, to a bed.
* ¡¡-. * * * * “That at the time of the accident aforesaid, your petitioner was in the employ of the defendant, North Louisiana Sanitarium, Inc., and went to Gilmer Hospital at the direction and upon orders of his superiors, while so lifting said heavy patient your petitioner acted upon instructions, and at the direction, of the authorized agents and employees of the said Peachy R. Gilmer, M. D., doing business as Gilmer Hospital.”
Relevant to the issue are those averments which relate plaintiff went to the Gilmer Hospital at the direction of and upon orders of his superiors and that while he was engaged in the particular task above alleged, he acted upon instructions and at the direction of the authorized agents and employees of Dr. Gilmer. Conceding, indeed as we must in testing the correctness of the judgment upon the exception, that these averments are true, can it be said plaintiff has sufficiently alleged employment relationship with Dr. Gilmer as to the particular undertaking in which he was engaged at the time of his alleged injury? Such contention encompasses a claim as of a borrowed or loaned employee.
The doctrine relied upon has been repeatedly recognized and is well established in Louisiana. As noted, with approval by our Supreme Court, in B. & G. Crane Service, Inc., v. Thomas W. Hooley & Sons, 1955, 227 La. 677, 80 So.2d 369, the broad principles of law governing the doctrine were set out.in Standard Oil Company v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 253, 53 L. Ed. 480, in the following language:
“One may be in the general service of another, and, nevertheless, with respect to particular work, may be transferred, with his own consent or acquiescence, to the service of a third person, so that he becomes the servant of that person, with all the legal consequences of the new relation. * * * It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men become pro hac vice the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work and they are, for the time, his workmen. In the second case, he who agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the ultimate benefit of the other, it is still, in its doing, his own work. To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed, — a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. [See also, the annotations at 1 A.L.R.2d 303; 17 A.L.R.2d 1388; 39 C.J. 558, Section 669; 56 C.J.S., verbo Master and Servant § 330, P. 1093].”
The answer we seek, therefore, requires a determination of which of the two parties, North Louisiana Sanitarium, *525 Inc. or Dr. Peachy R. Gilmer, was the employer of Stafford when he sustained injury. While a number of tests may be employed for the purpose of determining which of two employers will becoms liable for the injury to the employee, our courts have usually rested responsibility on the party determined to have the power to control and direct the servant in the performance of his work. This test of control can in most instances be applied, but on some occasions requires difficult and fine distinctions. Other circumstances affecting the relationship, enumerated by the courts are the selection and engagement of the employee, payment of wages and the power of dismissal. The latter test, however, seems merely accessory to the power of control.
Malone, in his work on Louisiana Workmen’s Compensation, declares it is important to determine when the performance of the requested work operates as a departure from the original contract. He has this to say:
“ * * * However, it is common knowledge that minor enlargements of the contract which contemplate the same general type of work are frequently made without the advance personal consent of the contractor, who is generally agreeable thereto, since these enlargements increase the value of his contract or maintain the goodwill of the principal. If the effect of such a minor-departure were to sever the relation between the contractor and his employee, the latter would be placed in competition with his employer. * * * ” Louisiana Workmen’s Compensation, Malone, pp. 64 and 65.
We think it is obvious that the task performed by Stafford was relatively a simple one, and supervision or instruction by the agents or employees of Dr. Gilmer in the performance of the particular task would at best be in the nature of cooperation rather than control. Stafford’s regular employment being that of an orderly, undoubtedly encompasses similar duties for his employer, the North Louisiana Sanitarium, Inc., and probably accounts for his own supervisors directing him to go next door to the Gilmer Hospital. Such a departure from his regular place of work apparently was not a departure from his customary duties. The service so performed at Gilmer Hospital in its relation to the contract of employment was of minor consequence and under such circumstances Stafford’s regular employer would not have been inclined to relinquish his usual control and supervision over Stafford. Nor do we believe that the incident would justify a conclusion that Stafford consented and agreed to be subject to the control and supervision of the agents and employees of Gilmer. Such control as above suggested would indeed be unnecessary and not desirable.
In Rooney v. Overseas Ry., Inc., 1931, 173 La. 183, 136 So. 486, 488, the court stated:
“Resolving all doubts in the pleadings against the pleader, nevertheless these facts do not show, or even make likely, that Rooney, when he complied with the superintendent’s instructions, became the employee of defendants. The presumption is that, when he left the Seatrain to go upon the crane, he went upon it as the employee of the Todd Company, and continued so- until the accident. Cf. Emack’s Case, 232 Mass. 596, 123 N.E. 86. The facts do not logically admit of any other presumption or inference. It is not unusual for an employee, who is sent by his master to do a particular thing for another, in the course of his master’s business, after arriving there, to be called upon to do, in addition, some other thing in the same line, but it is not considered that the employee in undertaking to do such other thing, is acting for himself, and not for the one who sent him. To hold to the contrary would have a tendency to upset, as between master and employee, the established order of things, for it would *526 throw .the employee in competition with his master. The fact that Rooney was sent to do mechanical work on the Sea-train does not operate to show, or even make likely, that his authority, derived from the Todd Company, was limited to doing such work on the Seatrain, and did not extend, if deemed expedient, in an apparent emergency, to doing mechanical work on an agency which, though not part of the vessel, was used in connection with it, and which was owned by the same parties. * * * ”
Benoit v. Hunt Tool Company, 1951, 219 La. 380, 53 So.2d 137, 143, reversing La. App., 45 So. 2d 512, held that Guillory, a regular employee of the Hunt Tool Company, was not a borrowed employee of Morris & Meredith, Inc. when he sustained an accident after one of the officials of Morris & Meredith had instructed him to weld a fuel tank partially filled with fuel oil. At the time of the accident Guillory was in the general employ of Hunt Tool Company, which selected him, paid his wages and had the right to discharge him for any cause. Hunt Tool Company was engaged by Morris & Meredith to do its regular business through its servants in the common way and Guillory was doing the work of Hunt Tool Company in welding, for which he was to receive an agreed compensation. The court said in concluding that Guillory remained the employee of Hunt Tool Company:
“The fact that the official of Morris & Meredith suggested that Guillory use an electric torch in the welding of the tank, and that Morris & Meredith pointed out the welding to be done, did not constitute authoritative direction and control but was merely suggestion as to details and constituted necessary cooperation in the work being furnished in the larger undertaking.”
Our attention is invited to two cases in which the regular employee was held to have become a borrowed or loaned employee to the new master. The first of these is Spanja v. Thibodaux Boiler Works, Inc., La.App.1941, 2 So.2d 668, decided by the Court of Appeal for the Parish of Orleans. In that case the court was careful to point out that at the time of the accident Spanja was not doing the work of the Texas Company, his regular employer, but was, in fact, doing the work of Thibodaux Boiler Works, Inc., which task was not related to his regular employment. It is noted that Malone in his work on Louisiana Workmen’s Compensation, supra, on page 65, states the case is difficult to distinguish from the Rooney case and attempts to reconcile the two decisions on the ground that the Texas Company was in fact the principal with reference to the latter company. The distinction made by Justice Hawthorne in Benoit v. Hunt Tool Company, namely, that Spanja at the time of the accident was not doing the work of the Texas Company, and was doing the work of Thibodaux Boiler Works, Inc., was adopted in a case recently decided by this court, Dixon v. Herrin Transportation Company, La.App.1955,, 81 So.2d 159, in which this court held a church employee was an emergency or borrowed employee of the defendant trucking company, while assisting the driver of the truck in loading a drum of cleaning compound. Judge Ayres, as the organ of this court, found the conclusion inescapable that Dixon at the time of the accident, was. not engaged in any work connected with his employment by the church, and therefore, must be regarded under the rule announced in Spanja v. Thibodaux Boiler Works, Inc. as the servant pro hac vice of the defendant.
In the instant case Stafford did not step out of character when he was directed to and in fact, did, perform a service at the Gilmer Hospital. The job of physically handling patients is necessarily a part of an. orderly’s work and apparently was one of Stafford’s duties in connection with his. regular employment by the North Louisiana. Sanitarium, Inc.
We conclude that Stafford did not depart, from his regular employment when request *527 •ed to perform a duty such as he daily was accustomed to perform, although to accomplish it he was directed to go to a hospital adjoining that of his employer. Under the circumstances related in the petition we are quite certain there was no intention on the part of either Stafford or his regular employer to relinquish to the defendant, Dr. Gilmer, the right to supervise and control Stafford’s employment. It, is therefore our finding that the exception of no cause or right of action was properly sustained.
Counsel for the exceptor, Dr. Gilmer, further argues the judgment from which appealed should be sustained upon an additional ground for the reason that the work in which Stafford was engaged at the time of his injury was not of a hazardous nature within the intent and meaning of the Workmen’s Compensation Act. Irrespective of the merit which may be attached to this contention, the conclusion we have reached makes it unnecessary to consider the alternative contention of the exceptor.
For the reasons assigned, the judgment from which appealed is affirmed.