168 So.2d 360 (1964)
John Allen GUILLORY, Plaintiff-Appellee,
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY, Defendant-Appellant.
No. 1248.
Court of Appeal of Louisiana, Third Circuit.
October 27, 1964.
Rehearing Denied November 18, 1964.
Writ Refused January 18, 1965.
*361 Lewis & Lewis, by John Shaw, Opelousas, for defendant-appellant.
Preston N. Aucoin, Ville Platte, La., for plaintiff-appellee.
Voorhies, Labbe, Fontenot, Leonard & McGlasson, by J. Winston Fontenot, Lafayette, for defendant-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
SAVOY, Judge.
The following enumerated actions arise out of an injury to plaintiff's left hand, received when working as a roughneck on an oil rig.
In the instant case, plaintiff sued his employer's workmen's compensation insurance carrier, Hartford Accident and Indemnity Company, for total and permanent disability benefits, plus penalties and attorneys' fees. Plaintiff's employer was W. C. Fatjo, Inc., a drilling contractor.
Hartford answered the petition, denying responsibility on its part to plaintiff, and impleading Schlumberger Well Surveying Corporation and its insurance carrier, Aetna Casualty and Surety Company, as third party defendants. The third party demand alleged that plaintiff's injury resulted from the negligence of Schlumberger's employees, and alternatively, that plaintiff was, at the time of the injury, Schlumberger's borrowed employee, and that, accordingly, any judgment rendered against Hartford should be assessed against or contributed to by the third party defendants.
The third party defendants answered Hartford's demand denying any liability.
In two separate and companion suits, which were consolidated with the instant case, plaintiff, on the one hand, sued Aetna Casualty and Surety Company as the workmen's compensation and liability insurance carrier of Schlumberger, seeking damages in tort, and alternatively, in workmen's compensation.
To that petition, Aetna filed an exception of no right or cause of action with regard to the claim in tort on the basis that plaintiff's petition alleged that he was Schlumberger's borrowed employee, which, in itself, precludes recovery in tort.
Aetna also answered the petition, generally denying its allegations and any liability to plaintiff.
In the second consolidated case, plaintiff sued Schlumberger Well Surveying Corporation both in tort and in workmen's compensation, as in the suit against Aetna, to which Schlumberger raised the same exception and answered as in the case of Aetna. In addition, Schlumberger pleaded contributory negligence on plaintiff's part in its answer.
The exceptions of no right or cause of action were referred to the merits by the lower court, and after trial on the merits, the lower court did the following:
(a) overruled the exceptions of no right or cause of action;
(b) gave judgment in favor of plaintiff and against Hartford, his employer's workmen's compensation carrier, for total permanent *362 disability benefits, and denying plaintiff's demand for penalties and attorneys' fees;
(c) dismissed Hartford's third party demand against Schlumberger and Aetna;
(d) dismissed plaintiff's suits against Schlumberger and Aetna.
From that judgment, plaintiff and Hartford have appealed.
For a proper discussion of the issues involved, it is first necessary to briefly set forth how the accident happened.
Plaintiff was employed by W. C. Fatjo, the drilling contractor, as a roughneck, and, at the time of his injury, he was working on the floor of the rig. The Schlumberger crew was there for the purpose of running certain tests, and in order to do so, they ran certain recording instruments or "tools" down into the well hole. This operation is commonly referred to as "shooting" the well. The Schlumberger truck was parked adjacent to the rig, about forty feet or so from the well hole, which is in the center of the rig floor. A cable extended from the truck up into the derrick and down to the floor where it was attached to the tools. A winch on the truck was used to pull in and let out the cable so as to raise and lower the tool. At or near the point where the tool and the cable were joined, there was a "shive" or pulley through which the cable passed. As the cable was being manipulated preparatory to lowering the tool into the well hole, plaintiff somehow managed to grasp the moving cable with his left hand, and it was pulled into the inner works and wheels of the pulley. The accident occurred on March 2, 1963.
The first issue for decision is a determination of who plaintiff was working for at the time of his injury.
Lennick Joseph Boudreau, plaintiff's co-worker on the rig floor, stated that no one instructed him to assist the Schlumberger crew in any way. J. C. Prudhomme, a derrick hand for plaintiff's employer, testified that, in general, the well crew is expected to assist specialty units such as Schlumberger who come onto the rig for some specific job, but that those are standing orders from the drilling contractor, given as a part of their regular duties for the contractor. The plaintiff, John Allen Guillory, testified that he was on the well floor on orders from his driller; he did not recall any of the Schlumberger men instructing him to do anything. T. J. Doucet, one of the Schlumberger men at the scene, testified that they do not instruct the well crew, but rather, that both they and the well crew are under the over all authority of the drilling contractor's tool pusher or driller, once Schlumberger comes onto the well site.
Although plaintiff's testimony on this point is inconclusive, the testimony of Lennick Joseph Boudreau indicates that plaintiff had reached down to remove a metal cover plate from the well hole, so that the Schlumberger tool could be lowered into the hold, and that, in doing so, he grabbed the cable and his hand was pulled into the shive. To that limited extent, one might argue that he was, therefore, on orders of his supervisor, working for or assisting Schlumberger at the time. However, the testimony of the various witnesses makes it amply clear that plaintiff was under the continuing authority of his own employer. In like manner it is clear that, since no orders were given, or requests for assistance made, by the Schlumberger men to plaintiff or to other members of the well crew, Schlumberger did not assume control over plaintiff as an employee. Plaintiff's act in removing the hole cover was one he frequently performed for his own employer, and, factually, was no deviation from his regular duties. Consequently, plaintiff did not become an employee "pro hac vice" of Schlumberger. Stafford v. Gilmer, (La.App., 2 Cir., 1957), 98 So.2d 522; and, Blunt v. Lunsford, (La.App., 2 Cir., 1960), 126 So.2d 379.
The foregoing determination that plaintiff was working exclusively for his own employer thus rules out his claim for compensation as against Schlumberger and its *363 insurer, Aetna. In like manner, the claim of Hartford Accident and Indemnity Company for contribution from Aetna for workmen's compensation benefits paid to plaintiff by Hartford must fall. Stafford and Lunsford, supra.
As regards plaintiff's claims in tort against Schlumberger and Aetna, we will first take up the question of plaintiff's contributory negligence as pleaded by those two defendants.
The lower court held that plaintiff was contributorily negligent, and we see no error in that holding. Plaintiff testified that he had been warned about the cable by the Schlumberger men earlier in the evening on which he was injured. T. J. Doucet, one of the Schlumberger men, warned plaintiff shortly before the accident. J. C. Prudhomme, derrick hand for plaintiff's employer, had also warned plaintiff. Plaintiff did not know just how the accident happened or specifically what he was doing at the time. It is clear from the record, however, that there was nothing he was supposed to be doing just prior to the accident as regarded Schlumberger's operations, and that he obviously left what had been a position of safety a few feet away. The record is void of any evidence tending to show that plaintiff's attention was diverted by some outside force or event which might have caused him to forget about the presence of the cable. The prior warnings, coupled with his unexcused forgetfulness, constitute contributory negligence. Crosby v. Brown Oil Tools, Inc. (La.App. 1 Cir., 1957), 92 So.2d 115; Ensminger v. Great Atlantic and Pacific Tea Company (La. App., 2 Cir., 1963), 152 So.2d 586; and, Youngblood v. Newspaper Production Company, Inc. (La.App., 2 Cir., 1963), 158 So. 2d 432. Thus, while the record does not reveal to us any evidence of negligence on Schlumberger's part, in any event, plaintiff's claims in tort are barred by his contributory negligence.
In view of the foregoing, it is unnecessary to discuss the exceptions of no right or cause of action filed by Schlumberger and Aetna, which were overruled by the lower court, or the third party demand of Hartford, which alleged Schlumberger's negligence.
The sum total of the determinations thus far reached relegate plaintiff to his claim for workmen's compensation benefits as against Hartford Accident and Indemnity Company, his employer's insurance carrier.
Neither the occurrence of the accident nor the hazardous nature of the employment are at issue.
The first issue for decision is the extent of plaintiff's disability. The record contains the deposition of Dr. William L. Meuleman, an orthopedic surgeon, who testified on behalf of plaintiff. Dr. Meuleman examined plaintiff on October 21, 1963. He found that plaintiff had sustained fractures of the four fingers of the left hand and a laceration involving the index finger. Plaintiff was, at the time of examination, unable to straighten out the index, long or ring fingers, and could not make a secure fist; there was some numbness in the index finger. Plaintiff was unable to securely grasp objects less than one and one-half to two inches in diameter. He felt that plaintiff was unable to return to work as a roughneck at the time of the examination, and that the disability would continue for an indefinite period of time.
The record also contains the deposition of Dr. Guy J. Dunning, Jr., an orthopedic surgeon. Plaintiff had been referred to him by Dr. Soileau, who had previously treated plaintiff for plaintiff's employer and/or Hartford. He examined plaintiff on four or five occasions beginning June 11, 1963, and ending September 17, 1963. In June, Dr. Dunning made a diagnosis of fibrosis secondary to a crushing injury of the fingers of the left hand, with healed fractures. In July, he found some improvement in the motion of the hand, but the fingers lacked two and one-half inches of reaching the palm. In July, he noted some additional improvement in the motion of the *364 fingers, and plaintiff was instructed to return in one month. In August, he found the fractures were essentially healed, and that plaintiff lacked one and one-half inches of reaching the palm of his hand. In September, the last examination, Dr. Dunning found the motion of the fingers to within about one-inch of the palm; Dr. Dunning felt that plaintiff had received about all the medical care that was indicated; that plaintiff would probably have some residual stiffness which would improve in time; that he was disabled to the extent of about ten per cent of the entire hand and about three per cent of the body as a whole; he felt, however, that plaintiff was able to return to his job, and that the limitation of motion in the fingers would continue to improve. On cross-examination however, the doctor stated that plaintiff would not be able to securely grasp and hold objects less than an inch or so in diameter.
The record contains no other medical evidence. There is no lay testimony concerning the extent of disability other than that of plaintiff. He testified that, as of the time of trial, he was unable to hold anything small or to open his hand all the way; that the strength of his grip was under par; and that in working as a roughneck, one must handle various objects of small diameter, such as cables and wires.
Considering the foregoing medical evidence and plaintiff's testimony, we feel it unnecessary to belabor the question of disability. The preponderance of the evidence is in plaintiff's favor. The lower court found him to be totally disabled, and we see no manifest error therein.
The final question for decision concerns plaintiff's claim as against Hartford for penalties and attorneys' fees. In the instant case, plaintiff's compensation was discontinued after thirty-eight weeks, that is, after Dr. Dunning's report of September, 1963, in which he felt that plaintiff could return to work but that he had a temporary partial disability of about ten per cent of the hand and three per cent of the body as a whole. Since at the time this suit was instituted at least one of the doctors was of the opinion that plaintiff could return to work without permanent residual disability, defendant insurer was not arbitrary in terminating compensation; thus, the judgment of the trial court was correct in not allowing penalties and attorneys' fees.
For the reasons assigned, the judgment of the district court is affirmed at appellant's costs.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.