HOOD, Judge
(dissenting).
I am unable to agree with the majority that Burnel Ardoin was a “borrowed servant” of Hearin Tank Lines, and thus that his negligence renders the defendant liable in damages to plaintiff.
The evidence shows that Ardoin was a regular employee of Reddell Creosote Company. This company was engaged in creosoting lumber, and in connection with that business it acquired creosote and stored it in tanks on the company premises until needed. The defendant, Hearin Tank Lines, is a trucking company, and as a part of its business it transports and makes deliveries of liquids, including creosote, by means of tank trucks.
The tank truck used by defendant’s driver in delivering creosote to Reddell in this instance was equipped with a fifteen-foot hose, one end of which hose remained attached to the truck. In making this delivery, the truck was parked within a few feet of Reddell’s storage tank, and the loose end of the fifteen-foot hose was then attached by means of clamps to a *797 valve which formed a part of the storage tank. After that had been done and the valve on the storage tank had been opened, the pump on the truck was started and creosote was pumped from the container on the truck into ReddelFs storage tank.
It is true, as pointed out by the majority, that when defendant’s truck arrived at the creosote company’s premises, Ardoin was instructed by his employer, Reddell, to assist the driver of defendant’s truck in any way requested. Pursuant to those instructions, Ardoin went to a place near the truck and storage tank, but, as pointed out by the majority, there is some question as to whether he did anything at all after he arrived at that point until about forty-five minutes later and immediately before the accident occurred. The evidence is clear, however, that the driver of defendant’s truck did not need or request any assistance from Ardoin or from any one else, he did not instruct or tell Ardoin to do anything in connection with making this delivery, and he did not assume or exercise any control over Ardoin. During the entire forty-five minute period while the creosote was being pumped into the storage tank, Ardoin stood by his employer’s storage tank, but he did nothing in connection with the delivery of the creosote. He states that he did not remember even opening the valve on the storage tank before the pumping operations began. After most of the creosote had been pumped into the storage tank, Ardoin understood the truck driver to use the word “empty,” and he then proceeded to shut off the valve on the storage tank, being under the mistaken impression that that was the proper thing to do at that time. The majority correctly observes that Ardoin closed the valve “without being instructed, to do so.” The only act which Ardoin performed in connection with this operation, therefore, was a voluntary act, without any request or instructions from defendant’s agents, and contrary to the wishes of the driver of defendant’s truck.
I agree with the majority that the two general tests to be applied in determining whether the borrowed servant doctrine is applicable are: (1) Whose business was the employee engaged in, and (2) who had authoritative control of the employee. I also agree that either test, used alone, is not infallible, but that the doctrine is applicable where “it is clear that control by the defendant was coupled with performance for the defendant and in the defendant’s business.” Benoit, et al. v. Hunt Tool Company, et al., 219 La. 380, 53 So.2d 137. See also Humphreys, et al. v. Marquette Casualty Company, et al., 235 La. 355, 103 So.2d 895; Spanja v. Thibodaux Boiler Works, La.App.Orls., 33 So.2d 146; Blunt v. Lunsford, La.App. 2 Cir., 126 So.2d 379; and Malone, Louisiana Workmen’s Compensation Law & Practice, Sec. 57, pp. 12-16 (1964 P.P.). In applying those tests to the facts in the instant case, however, I can come to no other conclusion but that Ardoin was not an employee “pro hac vice” of defendant.
In the first place, if it is to be assumed that Ardoin did assist in any way in making the delivery, then it seems to me that he was performing duties as much for his general employer, Reddell Creosote Company, as for Hearin Tank Lines, since it was the business of Reddell to receive delivery of and to store creosote in its storage tank. And I assume that it was of more interest and concern to Reddell than to the defendant trucking company that the valve of Reddell’s storage tank be closed after the delivery had been made. In the second place, I find no evidence to the effect that the driver of defendant’s truck ever exercised any authoritative control over Ardoin. The driver did not ask for or need any assistance in making the delivery, and he did not accept or make use of any assistance which may have been offered by Ardoin or by Ardoin’s employer.
The facts and issues presented in this case are similar to those presented in Guillory v. Hartford Accident & Indemnity Company, La.App. 3 Cir., 168 So.2d 360 *798 (Writ Refused). There it was contended that plaintiff, Guillory, who was regularly employed by W. C. Fatjo, became an employee “pro hac vice” of defendant, Schlumberger, when he undertook to assist that defendant in running tests on an oil well, although the employees of Schlum-berger did not request Guillory’s assistance, nor did they assume control over him. We held that under those circumstances G-uillory did not become a borrowed employee of that defendant, and in so holding, we said:
“ * * * In like manner it is clear that, since no orders zvere given, or requests for assistance made, by the Schlumberger men to plaintiff or to other members of the well crew, Schlumberger did not assume control •over plaintiff as an employee. Plaintiff’s act in removing the hole cover was one he frequently performed for his own employer, and, factually, was no deviation from his regular duties. Consequently, plaintiff did not become an employee ‘pro hac vice’ of Schlum-berger. * * * ”
I also note the following language which was used by our Supreme Court in Benoit v. Hunt Tool Company, supra, and which I think is pertinent here:
“Since Guillory was in the general employ of Hunt Tool Company, it must appear from the evidence in or•der for it to be relieved from liability that the relation of master and servant which existed between them had been suspended, and that a new like relation betzveen Gu-illory and Morris ■& Meredith had been created and was in existence at the time of the accident.
Under the circumstances of this case we conclude that it was the work of Hunt Tool Company which was being performed, and that that company had ■not relinquished the right to control •Guillory in the performance of it. The fact that the official of Morris & Meredith suggested that Guillory use an electric torch in the welding of the tank, and that Morris & Meredith pointed out the welding to be done, did not constitute authoritative direction and control but was merely suggestion as to details and constituted necessary cooperation in the work being furnished in the larger undertaking.
We therefore conclude that Guil-lory was not the borrowed servant of Morris & Meredith but was the servant or employee of Hunt Tool Company at the time the accident occurred.” (emphasis added)
In the instant suit defendant’s driver did not give any orders to Ardoin, no request for assistance was made, and defendant’s employee did not assume control over Ardoin at any time. There is nothing in the record to indicate that the relation of master and servant which existed between Reddell and Ardoin had been suspended, and that a new like relation between Ardoin and defendant had been created and was in existence at the time of the accident. I do not think the evidence justifies a conclusion that Reddell had relinquished his right to control Ardoin, or that the truck driver exercised or ever intended to exercise any authoritative direction or control over him. Under the rules applied in the Guillory and the Ben-oit cases, therefore, Ardoin did not become an employee “pro hac vice” of the defendant.
If the conclusion of the majority that Ardoin was a borrowed servant of Hearin Tank Lines does stand, however, then I think it necessarily follows that plaintiff, Rovelia Young, must also be considered to be a borrowed servant of the same defendant, and his remedy against this defendant must be limited to workmen’s compensation benefits. Young was employed by Reddell, as was Ardoin, he received the same instructions as were received by Ardoin with reference to the delivery of *799 creosote, and he did identically the same thing Ardoin did pursuant to those instructions, except for the one voluntary act of Ardoin in turning off the valve on the storage tank. I, of course, am convinced that neither Young nor Ardoin was a borrowed servant, but in any event the same rule should apply to both. I cannot agree with the majority that Ardoin became a borrowed servant of the defendant while Young did not.
Since I feel that- Ardoin was not a borrowed servant of defendant, I think the majority erred in holding that the defendant is responsible in damages to plaintiff for the negligent acts of Ardoin. The evidence, in my opinion, fails to show any negligence on the part of the driver of defendant’s truck.
For these reasons, I respectfully dissent.