HAWTHORNE, Justice.
 

 Stanford Benoit and Joseph Holloway, employees of Morris & Meredith, Inc., an oil well drilling company, each instituted a suit seeking to recover damages from defendant Hunt Tool Company and its liability insurer, Insurors Indemnity and Insurance Company, for injuries sustained
 
 *385
 
 by them resulting from an explosion of a fuel tank caused by the negligent act of Henry Guillory, who was a welder in the general employ of Hunt Tool Company. Plaintiff Anchor Casualty Company, as compensation insurer for Morris & Meredith, Inc., and Wilson Manufacturing Company, instituted a suit against the same defendants seeking to recover the amount of workmen’s compensation and medical expenses paid by it to employees of those companies for injuries received as a result of the explosion of the fuel tank.
 

 All three cases were consolidated for the purpose of trial, with separate decrees to be rendered in each case. After trial in the lower court there was judgment dismissing the suit of each plaintiff. The basis of this decision was that Hunt Tool Company was not a third party in contemplation of the provisions of the Workmen’s Compensation Act of this state, and that the sole remedy of the plaintiffs Benoit and Holloway was for compensation, which they had already recovered from Anchor Casualty Company, and that the compensation insurer had no greater right than they.
 

 The Court of Appeal affirmed the judgment of the district court but for different reasons. 45 So.2d 512. The basis of its decision was that at the time of the accident Guillory, quoad these plaintiffs, was a third person within the meaning of the act, and that these plaintiffs could claim compensation and also sue in tort the third person causing damage, but that Guillory had been loaned to1 or hired by Morris & Meredith, Inc., and was at the time of the accident its employee under the borrowed servant doctrine, or that Guillory was pro hac vice an employee of Morris & Meredith, Inc., and that the defendant Hunt Tool Company was not liable for his negligent act. One of the judges dissented, being of the opinion that Guillory was an employee of Hunt Tool Company, and that the borrowed servant doctrine had no application. All members of the Court of Appeal were in full accord that the evidence clearly established that the accident and the injuries sustained by the plaintiffs Benoit and Holloway were due to the negligence of Henry Guillory in attempting to weld a partially closed tank containing fuel oil, and his negligence is conceded in this court and is not made an issue in this case.
 

 On application of all plaintiffs this court granted a writ to review the judgment of the 'Court of Appeal, and the case is now before us under our supervisory jurisdiction.
 

 As pointed out by the Court of Appeal, the facts in this case are not seriously disputed, and are set out in detail both in the majority and in the dissenting opinion. The principal question is whether from the facts in the case the negligent employee, Guillory, was under the law a borrowed servant, or employee pro hac vice, of Morris & Meredith, Inc. To determine
 
 *387
 
 this question we deem it necessary to reiterate certain pertinent facts.
 

 Defendant Hunt Tool Company was engaged in the welding business and the renting of .materials used in the oil well drilling business, and had in its regular employ several skilled welders. It rendered welding service away from its place of business, which included the furnishing of welders, equipment, and materials, for which it charged on an hourly basis. Upon leaving and returning to the shop the welders and their helpers on a particular job were required to' punch a clock, and they were paid by Hunt Tool Company for the time intervening. These employees were selected, employed, and paid by Hunt Tool Company, and the sole right to discharge them was also in the Hunt Tool Company. '
 

 Morris
 
 &
 
 Meredith Inc., was a corporation engaged in the oil well drilling business, and on the day of the accident and for some time prior thereto was engaged in the overhauling and repairing of a rig to be used in drilling for oil and gas. In the course of this work it was necessary to have welding done from time to time, and, as Morris & Meredith did not have welding equipment or supplies or welders in its employ, it engaged Hunt Tool Company to render this service, for which Morris & Meredith was .to pay to the tool company $5.50 per hour for a welder, a helper, welding equipment and supplies.
 

 From day to day there would be dispatched to the site of the rig one or more welders together with their helpers and the necessary welding supplies. The welding crew so’ dispatched was in the charge of Henry Guillory, the individual whose negligent act caused the explosion in the instant case. Upon their arrival at the site of the rig they would report to Mr. West, foreman of Morris & Meredith, and West or Mr. Morris, an officer of Morris & Meredith, would give them directions and instructions as to what objects or things were to be welded and what hours they were to work and when to leave and return to' the job. If the work of one of these welders proved unsatisfactory, Morris & Meredith could not discharge him but could order him to return to1 the welding shop of the Hunt Tool Company. Further, although these welders were informed as to what welding they were to do1 by Morris & Meredith, the method of accomplishment of such work, that is, the type of welding procedure to be used, was entirely up to the welders themselves, as they were skilled in this line of work. At the end of each day’s work, the welders would present to Morris & Meredith a ticket with a memorandum of the work done for that day, and some official of Morris & Meredith would sign it. One copy of this memorandum was kept by Morris & Meredith, and the welder would take another to the Hunt Tool Company. On the basis-of these tickets Hunt Tool Company would bill Morris & Meredith for the services
 
 *389
 
 rendered by its welders and for the use of its equipment and materials on the 'hourly basis agreed upon, and Morris & Meredith would pay Hunt Tool Company.
 

 On the day of the accident one of the officials of Morris & Meredith instructed a general employee of Hunt Tool Company, Henry Guillory, to weld a fuel tank partially filled with fuel oil. Guillory questioned the advisability of doing this work since the tank contained oil, and the official of Morris & Meredith suggested that he use an electric welding torch. During the process of this welding Guillory momentarily turned away from this particular job and lit an acetylene torch, and the explosion occurred. As a result of this explosion plaintiffs Beniot and Holloway, employees of Morris & Meredith, received the injuries for which they are seeking damages in the instant suits and for which they, as well as two other employees on the job, were paid the compensation which the other plaintiff, Anchor Casualty Company, the compensation insurer, seeks to recover.
 

 It is a well settled principle of law that the master is liable for the torts of his servant committed in the scope and course of his employment, but it is often difficult where two possible masters are involved to determine which is liable for the tort, and to determine such liability we must look to the doctrine of the borrowed servant or employee pro hac vice. In determining liability under this doctrine in some cases the courts have imposed liability on the person in whose business the employee was engaged at the time the tort was committed. In others the test has been the right of control over the servant at the time the tort was committed. It has been pointed out that in applying the latter test it is often difficult to decide just what fact or facts constitute control. Mere division of control does not, in itself, raise the presumption of surrender of control, but there is a presumption that the general employer is liable, and it rests upon him to show that, as to the particular work in question, the servant has been lent and is performing only the borrower’s work, and that he was not the defendant’s servant at all. It has been said that even the control test is not an infallible one, and that the elements of each case must be taken into consideration. Where, however, it is clear that control by the defendant was coupled with performance for the defendant and in the defendant’s business, the result is certain.
 

 Some courts follow the so called “whose business” test; others the “control” test. According to the Supreme Court of the United States these two tests are really one and the same, and determining .who controls the servant is merely a means of determining in whose business the servant is engaged. The Standard Oil Company v. Anderson, 212 U.S. 215,
 
 29
 
 S.Ct. 252, 53 L.Ed. 480; Denton v. Yazoo & Mississippi Valley Railroad Co. et al.; 284 U.S. 305,
 
 *391
 
 52 S.Ct. 141,
 
 76
 
 L.Ed. 310; see Brown, Lent Servant Doctrine, Insurance Law Journal of 1949, pp. 343-350; Note, 44 Harv.L.Rev. 1136.
 

 The decisions throughout this country-in which this doctrine has been applied cannot be reconciled, but we shall discuss what we consider to be the leading cases on the subject and then apply the test laid down therein, as we understand it, to the facts, in the instant case.
 

 The first of these is The Standard Oil Company v. Anderson, supra. In that case the injured employee was employed as a longshoreman by a master stevedore, who was under contract with the Standard Oil Company for the loading of a ship. All the work of loading the ship was done by the employees of the stevedore except the operation of a winch, which was done by a winchman in the general employ of the Standard Oil Company. This winch-man hoisted and lowered cases of oil at signals which were given by an employee of the stevedore. The plaintiff was injured by reason of the negligence of this winchman, and the question presented in the case was whether the winchman at the time the injuries were received by the plaintiff was the servant of the defendant, Standard Oil Company, or of the stevedore. In determining this question the court pointed out that it would aid in ascertaining the true test to consider the reason of the rule for a, master’s responsibility, and then said: “ * * * The accepted reason for it is that given by Chief Justice Shaw in the case of Farwell v. Boston & Worcester Railroad Corporation, 4 Mete. 49. In substance, it is that the master is answerable for the wrongs of his servant, not because he has authorized them nor because the servant, in his negligent conduct, represents the master, but because he is conducting the master’s affairs, and the master is bound to see that his affairs are so conducted that others are not injured. It is said in that case that this is a ‘great principle of social duty,’ adopted ‘from general considerations of policy and security.’ But whether the reasons of the rule be grounded in considerations of policy or rested upon historical tradition, there is a clear limitation to its extent. Guy v. Donald, 203 U.S. 399, 406, 27 .S.Ct. 63, 51 L.Ed. 245, 247. The master’s responsibility cannot be extended beyond the limits of the master’s work. If the servant is doing his own work or that of some other, the master is not answerable for his negligence in the performance of it.” [212 U.S. 215, 29 S.Ct. 254.]
 

 The court then continued: “It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in 'his employ who' can do it nor is willing to take such persons into -his general service. He may then enter into an agreement with another. If that other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men became
 
 *393
 
 [become]
 
 pro hac vice
 
 the servants of him to whom they are furnished. But, on the other hand, one may prefer to enter into an agreement with another that that other, for a consideration, shall himself perform the work through servants of his own selection, retaining the direction and control of them. In the first case, he to whom the workmen are furnished is responsible for their negligence in the conduct of the work, because the work is his work, and they are, for the time, his workmen. In the second case, he who. agrees to furnish the completed work through servants over whom he retains control is responsible for their negligence in the conduct of it, because, though it is done for the itltimate benefit of the other, it is still, in its doing, his own work.
 
 To determine whether a given case falls zvithin the one class or the other we must inquire zvhose is the work being performed,
 
 — a
 
 question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the zvork furnished is part of a larger undertaking.”
 
 (Italics ours.)
 

 In concluding that the winchman was the employee of the defendant, Standard Oil Company, the court pointed out that this employee was in the general employ of the defendant, which selected him, paid his wages, and had the right to discharge him for incompetency or for any other reason, and in order for the defendant to be relieved from liability it must appear that that relation for the time being had been suspended, and that a new like relation between the winchman and the stevedore had been created, which was not supported by the evidence in the case.
 

 In Denton v. Yazoo & Mississippi Valley Railroad Co. et al., supra., the plaintiff was injured by a general employee of the railroad, who at the time was engaged in loading United States mail into a mail car under the direction of a United States postal transfer clerk. The court found that the negligent employee was under the control of the government and that the work he was doing was that of the government. After reviewing numerous cases cited by petitioner, the court said: “In each of these cases, the facts plainly demonstrated that the work was that of the general master, and that in doing it, the servant had not passed under the direction and control of the person for whom the immediate work was being done; the latter being looked to not for commands, but for information. * * * ” [284 U.S. 305, 52 S.Ct. 143.]
 

 In Driscoll v. Towle, 181 Mass. 416, 63 N.E. 922, decided by the Supreme Court of Massachusetts, with its then Chief Justice Holmes as the organ of the court, the defendant was engaged in a general teaming business and was the owner of a
 
 *395
 
 horse and wagon. In his employment was one Keenan, who had been using the horse and wagon to carry property for an electric company under an arrangement between it a,nd the master. On the day of the accident the employee with the horse and wagon reported to the electric company, and an employee of that company gave him his orders as to what to do- and where to go, and he spent the day carrying out these orders. While on a trip for materials pursuant to an order of the electric company, 'he struck and injured plaintiff with the horse and wagon. Plaintiff instituted suit against the owner of the teaming business. The question for the court’s decision was whether the employee at the time of the accident was the defendant’s servant, and it concluded that the facts in the case were at least evidence that the employee was the defendant’s servant and not the servant of the electric company. In the course of the opinion the court said:
 

 “In this case the contract between the defendant and the Electric Light Company was not stated in terms, but it fairly could have been found to have been an ordinary contract by the defendant to do .his regular business by his servants in the common way. In all probability it was nothing more. Of course in such cases the party who employs the contractor indicates the work to be done and in that sense controls the servant, as he would control the contractor if he were present. But the person who receives such orders is not subject to the general orders of the party who gives them. He does his own business in his own way, and the orders which he receives simply point out to him the work which he or his master has undertaken to do. There is not that degree of intimacy and generality in the subjection of one to the other which is necessary in order to identify the two and to make the employer liable under the fiction that the act of the employed is his act.
 

 * * * * * *
 

 “In cases like the present, there is a general consensus of authority that, although a driver may be ordered by those who have dealt with his master to go to this place or that, to take this or that burden, to hurry or to take his time, nevertheless in respect to the manner of his driving and the control of his horse he remains subject to- no orders but those of the man who> pays him. Therefore he can make no one else liable if he negligently runs a person down in the street. * * * ”
 

 In Charles v. Barrett, 233 N.Y. 127, 135 N.E. 199, 200, decided by the Court of Appeals of New York, with Justice Cardozo as its organ, the rule here under consideration was stated as follows: “ ■* * * The rule now is that, as long as the employee ' is furthering the business of his general employer by the service rendered to another, there will be no inference of a new relation ■ unless command has been
 
 *397
 
 surrendered, and no inference of its surrender from the mere fact of its division.
 

 * * H= ”
 

 In Rooney v. Overseas Ry., Inc., et al., 173 La. 183, 136 So. 486, 488, the defendant filed an exception of no cause of action, urging that the petition for damages disclosed that the deceased employee was in the employment of the defendants, Overseas Railway, Inc., and Mississippi Shipping Company, and that therefore the plaintiff did not have a, cause of action ex delicto, her sole remedy being under the employers’ liability act. In that case the employee for whose death the action was brought by plaintiff was a general employee of the Todd Engineering Dry Dock & Repair Company, Inc., as a mechanic. At the request .of the defendants, Overseas Railway, Inc., and Mississippi Shipping Company, the Todd company sent this employee to make repairs to the steamship Seatrain owned by the defendants. While the employee was working on the steamship, the superintendent in charge instructed him to leave the Seatrain and to go on a crane, also- owned by the defendants, and make an examination thereof. While thus engaged he received the injuries from which he died. This court in reversing a judgmént sustaining the exception of no cause of action held that under the petition the deceased was not an employee of the defendants but remained in the general employment of the Todd company, and in the course of the opinion said: “Resolving all doubts in the pleadings against the pleader, nevertheless these facts do not show, or even make likely, that Rooney [the deceased employee], when he complied with the superintendent’s instructions, became the employee of defendants. The presumption is that, when he left the Seatrain to go upon the crane, he went upon it as the employee of the Todd Company, and continued so until the accident. Cf. Emack’s Case, 232 Mass. 596, 123 N.E. 86. The facts do not logically admit of any other presumption or inference. It is not unusual for an employee, who is sent by his master to do a particular thing for another, in the course of his master’s business, after arriving there, to be called 'upon to do-, in addition, some other thing in the same line, but it is not considered that the employee, in undertaking to do such other thing, is acting for himself, and not for the one who sent him. * * * ”
 

 In other words, the court concluded that at the time of the accident the deceased employee was in the scope of, and was performing, the business of his general employer and was doing what his employment impliedly authorized him to do.
 

 In the instant case Guillory was in the general employ of Hunt Tool Company, which selected him, paid his wages, and had the right to discharge him for any cause. By agreement with Morris & Meredith, Hunt Tool Company was to do its regular business through its servants in the common
 
 *399
 
 way, and Guillory was doing the work of this defendant, that is, rendering welding service, for which it was to receive an agreed compensation. The materials and welding equipment were its own. The work was done by the defendant for a price as its own work by and through its own instrumentalities and servants in its general employ.
 

 Since Guillory was in the general employ of Hunt Tool Company, it must appear from the evidence in order for it to be relieved from liability that the relation of master and servant which existed between them had been suspended, a,nd that a new like relation between Guillory and Morris & Meredith had been created and was in existence at the time of the accident.
 

 Under the circumstances of this case we conclude that it was the work of Hunt Tool Company which was being performed, and that that company had not relinquished the right to control Guillory in the performance of it. The fact that the official of Morris & Meredith suggested that Guillory use an electric torch in the welding of the tank, and that Morris & Meredith pointed out the welding to be done, did not constitute authoritative direction and control but was merely suggestion as to details and constituted necessary cooperation in the work being furnished in the larger undertaking.
 

 We therefore conclude that Guillory was not the borrowed servant of Morris & Meredith but was the servant or employee of Hunt Tool Company at the time the accident occurred.
 

 Respondents cite several cases from the Courts of Appeal of this state in which the borrowed servant doctrine has been recognized. In some of these cases the “whose business” test was applied, in others the “right of control” or “control” test was used, and in still others both tests were discussed. In reading these cases we do not think that any of them is in conflict with what we have said or held herein. One of the principal Court of Appeal cases relied upon by respondents is Spanja v. Thibodaux Boiler Works, Inc., et al., 2 So.2d 668, 674, decided by the Court of Appeal for the Parish of Orleans. That court concluded that an injured employee, although in the general employment of the Texas Company, was a borrowed servant of the Thibodaux Boiler Works, but in doing so the court was careful to point out that at the time of the accident he was not doing the work of the Texas Company, and was doing the work of the Thibodaux Boiler Works. This is conclusively shown by the following language quoted from that opinion: “ * * * But the transferring of the machinery was not his [the injured employee’s] job and it was not the job of the Texas Company [the general employer]. It was the job of the Thibodaux Company and when, at the request of employees of that company, he undertook to assist them in their particular work, he became an employee of their employer, the Thibodaux Company.”
 

 
 *401
 
 Respondents make the contention that the employment of plaintiffs Benoit and Holloway is covered by the Workmen’s Compensation Act of this state, and that their exclusive remedy for the injuries sustained by them is under that act, and that they have no cause of action for damages under Article 2315 of the Civil Code, since the defendant Hunt Tool Company is not a third person within the meaning of Section
 
 7
 
 of the act.
 

 Under the Workmen’s Compensation Act and the jurisprudence of this state, the exclusive remedy of the employees of the contractor against the principal, as these two’ terms are used in the act, is for workmen’s compensation, and there is no- remedy in tort against the principal, as the principal is not a third person under the provisions of Section
 
 7
 
 of the act. Sections 6, 7, and 34, Act 20 of 1914, as amended, LSA-RS 23:1061, 23:1101, 23:1032; Thibodaux et al. v. Sun Oil Co. et al., La.App., 40 So.2d 761, affirmed 218 La. 453, 49 So.2d 852. The effect of Section 6 is that the principal shall be considered the employer of the employees of the contractor, in contemplation of the statute, so that such employees shall have the right to demand compensation from .the principal, and this is their exclusive remedy, and the principal cannot be held liable to the employees of the contractor in tort. There is no provision in the act that the contractor shall be liable to the employees of the principal in compensation, and in the absence of any such statutory provision the employees of the principal are not denied the right to proceed in tort against the contractor under Article 2315.
 

 Respondents argue that we should construe the compensation act so as to deny to an employee of the principal a right of action for damages against the contractor, for the reason that it is not in accordance with the principles of the Workmen’s Compensation Act that, of two men working shoulder to shoulder, one, being the employee of the principal, should be entitled to’ more benefits and greater advantages than the other. This is a matter for the Legislature and not for the courts, and we have no authority to deprive such an employee of the rights given him under Article 2315 of the Code. No provision of the compensation act deprives the plaintiffs, the employees of Morris & Meredith, the principal, of their action in tort against Hunt Tool Company, which is a third party within the meaning of the compensation act.
 

 In support of this latter argument, respondents cite the case of Younger v. Giller Contracting Co., Inc., 143 Fla. 335, 196 So. 690. The holding in that case supports their contention. The Florida statute is similar but not identical to ours, and that court in arriving at the conclusion contended for by respondents herein concluded that it was the intention of the Legislature to deny to the employees of the
 
 *403
 
 principal a right of action in tort against the contractor. But our statute, as we have stated, is susceptible of no such interpretation, and the interpretation given to the Florida statute by that court is not binding in this state.
 

 The last contention of respondents is that, if they are held liable to the plaintiffs, they should have a judgment against Morris & Meredith, Inc., because the sole cause of the accident was the action of Morris in ordering Guillory to weld a fuel tank which contained fuel oil.
 

 To recover against Morris & Meredith, they urge that “a servant who is acting under the orders of his master is not negligent if he performs the act and it results in an injury. The servant has the' right to rely on the superior knowledge of his master”, citing Lee v. Powell Bros. & Sanders Co. et al., 126 La. 51, 52 So. 214; Hunley v. A. L. Patterson & Co., 116 La. 736, 41 So. 54; Cross, v. Lee Lumber Co., 130 La. 66, 57 So. 631; Carter v. Fred W. Dubach Lumber Co., 113 La. 239, 36 So. 952. The cases cited are ones in which recovery was sought by a servant against the master and do not apply here, but the argument, of course, is answered by the answer to the borrowed servant argument. The order of Morris was not the order of Guillory’s master, because Hunt Tool Company, and not Morris, was his master. The negligent act of Guillory therefore could not be considered a negligent act of Morris & Meredith for which it alone would be responsible.
 

 Since we have concluded that Guillory was the servant of Hunt Tool Company and that it is responsible for his negligent act, the only remaining question is the quantum of damages that may be due these respective plaintiffs, and to determine this question we have concluded to, remand the cases to the Court of Appeal, First Circuit, for a final decision. See Salter v. Zoder, 216 La. 769, 44 So.2d 862.
 

 For the reasons assigned, the judgments of the district court and the Court of Appeal in each of these cases, Stanford Benoit v. Hunt Tool Company et al., Joseph Holloway v. Hunt Tool Company et al., and Anchor Casualty Company v. Hunt Tool Company et al., are reversed, annulled, and set aside, and it is now adjudged and decreed that there be judgment in favor of the plaintiff in each case, and against the defendants, for such sum as the Court of Appeal may find the facts of the case warrant. All costs are to be paid by defendants-respondents.
 

 LE BLANC, J., dissents with written reasons.
 

 LE BLANC, Justice (dissenting).
 

 I agree with the law as stated in the majority opinion on the subject of a borrowed employee but cannot agree with the
 
 *405
 
 conclusion on the facts reached in the case. I am of the opinion that the facts conclusively show that Guillory was, to- all intents and purposes, the employee of Morris & Meredith; that in performing the services he was rendering he acted under their absolute direction and control and definitely was subject to dismissal by them if his work proved unsatisfactory. It is stated in the majority opinion that “If the work of one of the welders proved unsatisfactory, Morris & Meredith could not discharge him but could order him to return to the welding shop of the Hunt Tool Company”. It seems a bit illogical to me to state that an employer could not discharge a man whose work proves unsatisfactory and to state in the same breath that he could give him such an order as, in my opinion, could mean nothing else but a dismissal or discharge from the job on which he was engaged because of dissatisfaction with his work.
 

 Stress seems to be placed on the point that the welders who worked on this job punched the time clock before they left Hunt Tool Company’s place of business and after they returned from work and that they were paid by that company. I have no doubt however that between those two intervals of punching the clock they were on Morris & Meredith’s time and although they were paid directly by Hunt Tool Company, it was out of funds received from Morris & Meredith for the work they did for them that Hunt Tool Company paid them.
 

 I dissent.