MILLER, Judge.
This is an appeal by plaintiffs from a judgment of the trial court sustaining motions for summary judgment filed by Lof-tin & Goss Construction Company and its liability insurer, Continental Insurance Company, and by Continental Oil Company, and its liability insurer, Hartford Accident and Indemnity Company.
The action arises from the rupture of a high pressure gas pipeline which occurred about 5:00 P.M., July 18, 1967. Earlier that day, a dragline owned and operated by M. H. Wilkinson, insured by Travelers Insurance Company, (the remaining defendants in this litigation) struck a gas valve attached to an underground pipeline during the course of digging a new pipeline ditch parallel to the existing pipeline. This caused a substantial leak in the 16 inch line. When this accident occurred, M. H. Wilkinson was employed by Augenstein Construction Company, as were both plaintiffs.
Plaintiffs’ only contention involving Loftin & Goss Construction Company is the allegation that the dragline was owned and being operated at the time of the accident by M. H. Wilkinson “and Lof- *68 tin & Goss Construction Company”. Lof-tin & Goss filed in the record an affidavit by the construction superintendent of Lof-tin & Goss and the deposition of M. H. Wilkinson, the owner and operator of the dragline, both stating unequivocally that Loftin & Goss had no connection with the dragline at the time of the accident. There was no affidavit, deposition or evidence to the contrary, and therefore the motion for summary judgment filed by Loftin & Goss and its insurer Continental was properly sustained by the trial court. L.C.C.P. Article 967.
After the accident, an employee of Au-genstein Construction Company notified Continental and an employee from Continental, Mr. Robichaux, was dispatched to the location of the damaged gas valve. When the employee arrived, it was the end of the work day for Augenstein’s employees, but the Continental employee asked Mr. Hobb Nail, an official from Au-genstein, to have employees of Augenstein dig a hole around the damaged gas line. Mr. Nail and/or the Continental employee talked to Augenstein’s foreman, Mr. Johnny Bridges, asking him to assign some laborers to the job. Mr. Bridges assigned three men, two of whom were the plaintiffs. The third employee became ill from the gas fumes and left the scene before the ruptured gas line exploded.[1] Although both plaintiffs also became ill from the fumes, they kept returning to the work. At the time of the explosion they had dug a hole about two or three feet deep, and were digging with their hands near the bottom of the pipeline to expose the pipe for repairs. The explosion caused the alleged injuries for which plaintiffs seek damages.
Plaintiffs sued in tort and later amended to claim, in the alternative, workmen’s compensation benefits. Prior to filing this suit, both plaintiffs entered into workmen’s compensation settlements with Augenstein for injuries sustained in this accident. Neither reserved rights to claim further benefits. The trial court held that plaintiffs were “borrowed employees” of Continental and sustained Continental Oil Company’s motion for summary judgment on the tort claim. The trial court sustained the Company’s exception of no right of action to the workmen’s compensation claim holding that plaintiffs' settlement with Au-genstine constituted a release to Continental Oil Company.
Appellants contend that the trial court erred in holding that appellants were “borrowed” employees and that their exclusive remedy was under the Louisiana Workmen’s Compensation Statute; and further in holding that the compromise settlements with Augenstein barred recovery of compensation benefits from Continental Oil Company.
Under LSA-C.C.P. art. 966, a motion for summary judgment can only be sustained where “the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.”
In the recent case of Roy & Roy v. Riddle, 187 So.2d 492 (La.App.3rd Cir., 1966) at page 494, we construed these statutory provisions as follows:
“The courts have noted repeatedly that the summary judgment remedy is not a substitute for a trial and may not be resorted to when there is a genuine issue of material fact which must be resolved. In passing upon a motion for summary judgment, the function of the court is not to determine the merits of the issues raised, but rather only to determine whether or not there is a genuine issue of material fact. To obtain a summary judgment it is not sufficient to prove *69 that it is unlikely that the plaintiff may recover, nor that the showing then made preponderantly indicates there is no liability. The burden of showing that there is not a material factual issue is upon the mover for summary judgment. All doubts are to be resolved against the granting of a summary judgment and in favor of a trial on the merits to resolve disputed facts.”
Plaintiffs alleged that they were employed by Augenstein as laborers on a pipeline construction job near Westlake, Louisiana; that they received personal injuries while digging around a gas pipeline owned by Continental Oil Company after the pipeline had been damaged by M. H. Wilkinson who was also employed by Au-genstein; that plaintiffs were digging around the pipeline at the request of Continental Oil Company acting through one of its employees; and that the Continental Oil Company employee directed plaintiffs to dig around the gas pipeline in an attempt to locate the gas leak.
Plaintiffs allege negligence on the part of Continental Oil Company in Article V as follows:
“E. Failing to block off the area after being notified of the escape of gas from the damaged gas-valve and ordering petitioners to dig a hole around said damaged gas-valve.
“K. In ordering petitioners to dig a hole at the damaged gas-valve site without first having the area in a safe condition.
“L. In failing to correct the dangerous condition which existed at the time the order was given to petitioners to dig said hole around the damaged gas-valve, all prior to the happening of the explosion.
“M. In knowingly permitting the gaseous substance flowing through the pipeline to escape in the area where petitioners were digging a hole, all on the orders of company officials from CONTINENTAL OIL COMPANY.”
Appellants contend that the affidavits and the depositions do not sustain Continental Oil Company’s position that appellants were “borrowed” employees of Continental Oil Company. They cite the fact that the record shows that no wages were paid by Continental. They argue that plaintiffs did not know of their so called employment by Continental. Plaintiffs were ordered by Mr. Bridges, a foreman for Augenstein, to dig the hole to find the leak on the pipeline. A tractor with back-hole attachment and operator were also furnished by Augenstein. Shovels were also furnished by Augenstein. Most important of all, however, the record reflects that it was to Augenstein’s interest to minimize the damages caused to Continental’s pipeline.
The trial court concluded that “the two plaintiffs in their own deposition reflect that they were ‘borrowed’ employees of Continental Oil Company at the time of the accident, and as such their exclusive remedy would be in workmen’s compensation. A tort action does not lie against Continental Oil Company. Humphreys v. Marquette Casualty Company, 235 La. 355, 103 So.2d 895 and Maryland Casualty Company v. Liberty Mutual Insurance Company [La.App.] 194 So.2d 204.”
Both Hooper and Trahan testified that the Continental man (Mr. Robichaux) told them where to dig to look for a cutoff valve and to he careful not to make a spark. While these brief instructions were given it appears that Augenstein was then represented by its president, its superintendent, its foreman, the dragline operator and “swamper,” the backhole tractor operator, and three employees. And all of them, excepting the two plaintiffs, but including “the Continental man”, left the scene shortly thereafter. Mr. Robichaux stated *70 in his affidavit that he went to his car to call for a crew to come make repairs.
While there is much evidence in the record to support the holding of the trial judge, we find the jurisprudence on the borrowed servant doctrine to be such that one must carefully study the peculiar facts of each case in order to determine when the doctrine applies. Without the benefit of a full trial, we cannot say what the facts in this case will eventually prove to be.
As stated in the landmark case of Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137 (1951), the two general tests of the borrowed servant doctrine are: (1) Whose business was the employee engaged in, and (2) Who had authoritative control of the employee. The Court pointed out that either test, used alone, is not infallible, but said: “Where, however, it is clear that control by the defendant was coupled with performance for the defendant and in the defendant’s business, the result is certain.”
In the instant case, Augenstein had a substantial interest in minimizing the damages to the the pipeline because the drag-line which caused the damages was then working for Augenstein. Plaintiffs were sent to the job by Augenstein’s foreman and used Augenstein’s shovels. For a time they were assisted by Augenstein’s tractor equipped with a backhole attachment. The president, the general superintendent and a foreman for Augenstein were at the site of the damage while Continental’s employee, Mr. Robichaux, gave the digging instructions, and while plaintiffs began their work.' There can be little question but that Augenstein had the right to control plaintiffs or to remove plaintiffs from the job had they so desired. As noted in the Be-noit case, supra:
“Since Guillory was in the general employ of Hunt Tool Company, it must appear from the evidence in order for it to be relieved from liability that the relation of master and servant which existed between them had been suspended, and that a new like relation between Guillory and Morris & Meredith had been created and was in existence at the time of the accident.
“Under the circumstances of this case we concluded that it was the work of Hunt Tool Company which was being performed, and that that company had not relinquished the right to control Guillory in the performance of it. * * *
“We therefore conclude that Guillory was not the borrowed servant of Morris & Meredith but was the servant or employee of Hunt Tool Company at the time the accident occurred.”
See also Fontenot v. National Transfer Company, 99 So.2d 795, (La.App.1st Cir. 1957).
The fact that plaintiffs had been instructed by an employee of Continental Oil Company as to where to dig, what to look for and to be careful not to make a spark, is persuasive that plaintiffs were borrowed employees of Continental. But plaintiffs are entitled to their day in court and to present evidence on the issue as to whose work was being performed by plaintiffs— Continental Oil Corporation or Augenstein Construction Company.
Since there is a material question of fact on this issue, the trial court’s judgment sustaining Continental Oil Company’s motion for summary judgment is reversed and the case is remanded to the district court for further proceedings consistent with this ruling.
Continental Oil Corporation and its insurer Hartford Accident and Indemnity Company, answered the appeal and contend that should this court find error in the trial court’s judgment on the motion for summary judgment, then Continental’s exception of no cause of action should be sustained. Essentially, this exception is based on the premise that plaintiffs have *71 alleged that they are borrowed servants, and therefore their remedy would be under the workmen’s compensation statute. Since we find that there is a material question on this issue, the exception of no cause of action is overruled.
Finally, we must consider appellants’ claim that the trial court improperly sustained Continental Oil Corporation’s exception of no right of action to plaintiffs’ amended petition whereby plaintiffs alternatively seek workmen’s compensation benefits. Should the trial court conclude on the trial of the merits that plaintiffs are borrowed servants, we affirm the trial court’s judgment that plaintiffs have lost their right to claim workmen’s compensation benefits from Continental Oil Corporation. As noted earlier, both plaintiffs settled their workmen’s compensation claim for injuries sustained in this accident with Augenstein Construction Company. Neither reserved any rights to proceed against Continental for further compensation benefits.
Plaintiffs rely on the case of Humphreys v. Marquette Casualty Company, 235 La. 355, 103 So.2d 895 (1958) suggesting that this case holds that a lending employer remains liable in compensation to his employee who is injured while serving the borrower, even though the borrower has paid compensation. But the Supreme Court there held the two insurers liable in solido. The Court was not concerned with making two awards of compensation. In cases such as this, both the general and the special employer are liable in solido for the compensation benefits due the injured employee. This being the case, when an employee settles with one or the other of the employers without specifically reserving his rights in some manner against the other employer, he has released the soli-dary obligor, and his claim for benefits is extinguished by his action. LSA-C.C.Art. 2091.
The workmen’s compensation act established the principle of liability without fault in those cases where an employee was injured during the course and scope of his employment. This act established one remedy for the employee and only one claim for that remedy. LSA-R.S. 23:1032. This claim can be asserted only once and in cases where there are two or more employers involved, there is only one claim and it may be asserted against either of the employers or all of them; but this claim cannot be asserted against each employer individually. That is to say, a plaintiff can sue one employer and not the other or he can sue them both, but he cannot settle with one or sue only one and then, at a later date, sue the other employer. Humphreys v. Marquette Casualty Company, supra; Casualty Reciprocal Exchange v. Richey Drilling & Well Service, 137 So.2d 127 (La.App.3rd Cir., 1962). See also, Maryland Casualty Co. v. Cowan, 219 So. 2d 530 (La.App.3rd Cir.1969).
We therefore affirm the trial court’s holding that should it be found that plaintiffs are borrowed employees of Continental Oil Corporation, then the workmen’s compensation claim against Continental Oil Corporation is properly dismissed.
Costs of this appeal are to be paid one-half by plaintiff-appellants and one-half by defendants, Continental Oil Corporation and its insurer, Hartford Accident and Indemnity Company.
Affirmed in part and in part, reversed and remanded.
On Application for Rehearing.
En Banc. Rehearing denied.

. While the term “exploded” is used in all pleadings and briefs, it was made clear that there was no fire. It appears that the rupture sustained a substantial sudden increase in size, permitting the sudden emission of a great amount of pressurized gas.