235 So.2d 612 (1970)
UNIVERSAL ENGINEERS & BUILDERS, INC., Plaintiff-Appellee,
v.
LAFAYETTE STEEL ERECTOR CORPORATION et al., Defendants-Appellants.
No. 3073.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1970.
Rehearings Denied June 16, 1970.
*613 Garrett, Ryland & Downs, by B. Dexter Ryland, Alexandria, and Edwards, Edwards & Broadhurst, by Nolan J. Edwards, Crowley, for defendants-appellants.
Davidson, Meaux, Onebane & Donohoe, by Edward C. Abell, Jr., Lafayette, for intervenor-appellant.
Smith & Stansbury, by J. Nathan Stansbury, Lafayette, for plaintiff-appellee.
Before TATE, SAVOY and MILLER, JJ.
SAVOY, Judge.
This is a suit by plaintiff for damages to a large piece of oilfield equipment caused by an accident on February 26, 1968, which occurred at the premises of Hub City Iron Works in Lafayette, Louisiana. Plaintiff was the designer and builder of the specialty oilfield equipment described as a "pipe break-out and lay-down machine", which was about 40 feet in length and weighed approximately 16,500 pounds. Defendant was called upon to furnish a crane and an operator to move the specialty machine from a truck bed to a platform. In the process, the crane and the machine fell, with the boom of the crane falling upon and destroying the machine. The property damage insurer of defendant, Aetna Insurance Company, joined with defendant in a petition of intervention for the damages to defendant's crane in the amount of $5,979.36.
After trial on the merits, judgment was rendered for plaintiff for the value of the specialty machine, less salvage, in the amount of $47,911.13. The petition in intervention was dismissed. From this judgment, defendant and intervenor have appealed to this Court. Plaintiff did not appeal or file an answer to the appeal.
Plaintiff was the designer of the oilfield equipment described as a "pipe break-out and lay-down machine". This machine, an experimental unit in the final stages of development, was designed for use in the oil industry for breaking out and laying down drill pipe or other pipe in offshore drilling operations. The machine was constructed at Hub City Iron Works under the direction of plaintiff's employees. On one previous occasion, plaintiff had obtained a crane and operator from defendant to set the machine in an upright position so that certain tests could be run. In order to test the machine again, after certain changes and additions, it was to be removed from a truck bed and placed in an upright position on a platform. The machine was about 40 feet long, and measured about four feet by six feet at its base and about four feet by four feet at its top. It weighed approximately 16,500 pounds.
On the morning of February 26, 1968, plaintiff's project engineer, William J. "Bill" Ryan, contacted the employees of defendant for the purpose of obtaining a crane operator to perform this special job. He testified that plaintiff often rented trucks and heavy equipment to move machinery, and that there was usually a minimum charge, a minimum number of hours at a specified rate, on a special job as this one. The agreement was for a four hour minimum at $18.50 per hour.
Defendant owns and operates large moving equipment, including cranes and other type of erection equipment, and is in the business of moving equipment with cranes and erecting steel in various types of construction. After a phone conversation between the president of the defendant corporation and Bill Ryan, the defendant dispatched to the job site a truck-mounted 15 ton (or 30,000 pound capacity) hydraulic crane, with its employee, Robert M. "Bob" Miller, as the operator. The crane had a 30,000 pound capacity with a short boom, but with an extended 50 foot boom its capacity was reduced to about 21,000 pounds.
*614 Prior to beginning the work, Miller had Ryan sign a rental agreement stipulating a four hour minimum at $18.50 per hour. The agreement or work order provided that "Rentee shall take reasonable care of equipment. Rentee shall be liable for any and all damage to any persons or property while said equipment is in its possession". Ryan testified he was asked to sign the work order in advance to agree to the four hour minimum charge. Ryan also testified he told Miller to make a lift as he had done before, indicating the platform and where the machine was to be placed, but he did not give any instructions as to how the job was to be done. He stated he told Miller that the machine had an additional weight of 2,000 pounds.
Miller testified he was told some weight was added, but thought he was told the total weight was about 15,000 pounds. He backed his crane-truck to about eight feet from the platform which was about seven feet high, placed outrigger pads under the rear outriggers on his crane-truck, extended the boom to fifty feet, and otherwise prepared for the lift. Plaintiff's machine was brought to the location on a flat bed trailer about 4½ feet high. Miller told the truck driver where to position the truck and trailer for the lift on the left side and parallel to the crane-truck about four to six feet away, with both vehicles facing in the same direction away from the platform. He then decided on the method of hooking onto the lifting eye of the machine, deciding on using a wire cable and a shackle which was hooked through the eye. He testified it was his impression that the lifting eye was the balancing point. With the truck in a stopped position, he lifted the top of the machine, using the power of the crane to lift and swing the machine, and moved the machine along a rolling tail board on the truck, until he had its base touching the ground, with the machine almost standing up. His next move was to get the machine close to his crane before he swung it to the rear of the crane-truck to lift it onto the platform. To do this, he instructed the truck driver how he intended to use the truck to assist him so that the machine would move in closer to the crane without swinging too much. He lifted the machine and instructed the truck driver to move out slowly. As he lifted, he brought the machine near the crane, lifting it about eight inches to one foot off the ground. As he got the machine near the crane, he noticed the tower or machine was not hanging level, but at a 15 or 20 degree angle. The truck had moved away. At this point he wanted to set the machine down to straighten it out, and as he considered how to do this, with the truck driver standing on the crane with him, a few minutes past. Then the ground gave way under the outrigger to the left rear of the crane-truck, where the weight was suspended, the boom swung to the right as the machine fell away; he tried to stop the swing by putting pressure on the swinging level in the opposite direction, but there was too much weight and angle to equalize the swing. The machine fell to the ground, and the boom of the crane fell on top of it. Miller and the truck driver jumped clear as the crane-truck turned on its side with the falling of the boom.
It was stipulated at the trial that the construction cost of plaintiff's machine was $48,061.13, and that it was a total loss with a salvage value of $150.00. The record also shows that defendant's crane was damaged to the extent of $5,979.36, and that this loss was paid by the intervenor, Aetna Insurance Company, less a deductible of $450.00 absorbed by defendant.
Defendant and intervenor maintain that plaintiff failed to establish any negligence on the part of the crane operator, and that the only negligence shown with certainty was that of plaintiff in the faulty placement of the lifting eye on its machine, causing the machine to hang at an angle and swing when lifted by a crane or other lifting device. It is further maintained that the district court erred in failing to *615 find that the crane operator was the borrowed servant or employee pro hac vice of plaintiff, so that any negligence on his part would be attributed to plaintiff. Plaintiff maintains that the findings as made by the district court were correct, and that the judgment should be affirmed.
The district court found that the sole cause of the accident was the negligence of the crane operator in his handling of the moving operation, in failing to adequately anchor the outriggers on his crane-truck, and in failing to properly house and set the outrigger pads, in failing to lower the machine immediately upon discovering that the crane could not lift the machine properly in the position in which it was situated, and generally in failing to adequately check the overall situation before commencing the moving operation.
After carefully examining the record in this case and considering the arguments of plaintiff and intervenor, this Court finds no manifest error in the findings as to negligence as made by the district court. With reference to the negligence of the crane operator, the evidence supports the findings of the district court that the crane operator was in full charge of the work, and that it was his exclusive responsibility under the facts to determine what had to be done, to determine the method of placing the spud pads and to ascertain the safety conditions involved. It was also his job to conduct the operation within the capability of the crane in a safe manner. Although certain of plaintiff's employees aided in the moving operation, Miller instructed them what to do. Since the crane operator was the expert in charge, it was his responsibility to use such caution and skill as was commensurate to the total situation. Although there is no showing as to the exact movement of the crane which caused the accident, whether the left rear outrigger slipped off the pad before the crane-truck turned over, or whether the particular position of the crane and the procedure used caused the sinking of the spud pad, nevertheless, this Court finds that the evidence shows the accident was caused by the negligent operation of the crane operator under the facts and circumstances of this case.
It is contended that plaintiff was negligent in placing the lifting eye of the machine in such a position that the whole device would hang at an angle and swing when it was lifted by a crane or other lifting device. Ryan testified that the lifting eye was placed in the position where it was as a matter of convenience. However, the machine was lifted with a single line, and the weight hanging at an angle would not cause any greater burden on the crane, although it may have made it more difficult to set the machine down.
The evidence shows the crane had lifted the machine in a more extended and weaker position, and had moved it to a point nearer the crane, apparently handling the weight in this stronger position, when the accident occurred, for reasons other than the tilting of the weight at a slight angle. Had the machine been held in a vertical position at this time, it would not have made any difference. Considering all the factors involved in this case, this Court agrees with the finding by the district court that the sole proximate cause of the accident was the negligence of the crane operator.
The next issue for consideration is whether the crane operator was a borrowed servant, or an employee pro hac vice, of the plaintiff at the time of the accident. If so, then the relationship of master and servant which previously existed between defendant and Miller must be held to be suspended, and plaintiff instead of defendant would be liable for the negligence of Miller. With respect to this issue, the following cases have been cited in the briefs by counsel: Benoit v. Hunt Tool Company, 219 La. 380, 53 So.2d 137; B & G Crane Service v. Thomas W. Hooley & Sons, 227 La. 677, 80 So.2d 369; McCutchen *616 v. Fruge, 132 So.2d 917 (La.App. 3 Cir. 1961); Truitt v. B & G Crane Service, Inc., 165 So.2d 874 (La.App. 4 Cir. 1964); Brown v. B & G Crane Service, Inc., 194 So.2d 746 (La.App. 4 Cir. 1966); Kezerle v. Hardware Mutual Casualty Company, 198 So.2d 119 (La.App. 3 Cir. 1967); and Owens v. AAA Contracting Company, 219 So.2d 226 (La.App. 1 Cir. 1969).
As is set forth in these cases, there is a presumption that the general employer retains control of and remains liable for the negligent acts of his employee. If the general employer seeks to avoid liability on the ground that his employee is the "borrowed servant" of another, then the burden of proof rests upon the general employer to show that the relationship of master and servant which previously existed between the general employer and employee has been suspended, that a new such relationship has been created between the borrowing employer and that employee, and that such new relationship was in existence at the time the accident occurred.
In the case of Kezerle v. Hardware Mutual Casualty Company, supra, the following can be found:
"A test which has been applied consistently in determining whether a person is a borrowed servant is to ascertain who controls him in that employment, and who has the power and right to control and direct him in the performance of his work. In order to establish that the employee is the borrowed servant of another, we think it is essential for the general employer to establish, among other necessary elements of proof, that the borrowing employer exercises control over the employee and has the right to control him, that the general employer has relinquished the right to control him, and that the employee is performing work for the borrowing employer in the latter's business."
In 17 A.L.R.2d 1388, at page 1395, it is said:
"The courts have regularly stated that the attributes of the master-servant relationship which must be present, either singly or in combination, if either the lessor or lessee of a motor vehicle or machine is to be held the master of, and liable, under the doctrine of respondeat superior, for the acts of, an operator furnished to the lessee in connection with the lease, include these: the right to select the operator; the right to discharge the operator (and this is given especially great weight); the right to supervise and direct, not merely the work to be done, but the method by which it should be done; and the manner in which the operator is paid, whether by the lessor directly, by the lessee indirectly through the lessor (the former compensating the latter for the operator's wages), or by the lessee directly."
In applying the above criterion to the case at hand, this Court agrees with the holding of the district court that the crane operator was not a borrowed servant of plaintiff. The record shows that although Miller was shown what needed to be done, he was in complete control of how the job was to be done. Miller made the decisions and directed the work. None of plaintiff's employees exercised any control over the operation of the crane, and had no right to control Miller. The various attributes of the master-servant relationship were not relinquished by defendant. Defendant required the use of one of its employee-operators on the lease of its equipment. Plaintiff could not discharge the operator. Miller had control of the method by which the work was to be done. Plaintiff paid for the unit, crane and operator, on a per hour basis (or fee basis really because of the minimum), and defendant compensated its operator in wages on a weekly basis. The work to be done was also that of the defendant. Considering *617 the facts and circumstances of this case, Miller cannot be held to have been the borrowed servant of plaintiff, since his general employer had not relinquished control over him, and he was not performing the work of plaintiff. The district court properly held Miller to be the employee of defendant at the time of the accident.
Defendant and intervenor rely mainly on the cases of B & G Crane Service v. Thomas W. Hooley & Sons, supra; McCutchen v. Fruge, supra; and Truitt v. B & G Crane Service, Inc., supra. In each of these cases it was determined that the employee whose negligent act caused the damage was the borrowed servant, or employee pro hac vice, of a party other than the general employer. The facts in each of these cases are different from the facts presented here, however, and for that reason we have concluded that a different result must be reached in the instant case. See the discussion as to these cases in Kezerle v. Hardware Mutual Casualty Company, supra, 198 So.2d beginning at page 125.
Also cited is the recent case of Owens v. AAA Contracting Company, supra. However, that case was a ruling on a summary judgment, and the report of the case does not give sufficient information on the facts to compare it with our ruling in the instant case. The court held that the affidavits and depositions as filed left no dispute or issue of fact as to the status of the operator of the "Cherry-picker" as a borrowed employee.
Accordingly, we uphold the rulings of the district court that plaintiff is entitled to recover from defendant the damages resulting from the accident, and that the claims in intervention should be dismissed.
For the reasons assigned, the judgment of the district court is affirmed, all costs of appeal are assessed against the defendant and the intervenor.
Affirmed.