124 So.2d 227 (1960)
Carrie Plant THOMPSON et al., Plaintiffs-Appellants,
v.
NATIONAL SURETY CORPORATION et al., Defendants-Appellees.
No. 9273.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1960.
Rehearing Denied December 1, 1960.
*228 Wellborn Jack and Joseph G. Hebert, Shreveport, for appellants.
Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, for appellees.
AYRES, Judge.
Plaintiffs, husband and wife, appeal from a judgment approving a jury verdict rejecting their demands for damages against the defendants, T. L. James & Co., Inc., and its public liability insurer, National Surety Corporation.
The question presented by this appeal relates primarily to one of liability, vel non, of the appellees for the negligent acts of one Henry Summage. More accurately stated, the question is whether such a relationship existed between T. L. James & Co., Inc., sometimes hereinafter referred to as James, and Summage as would, under the doctrine of respondeat superior, as expressed in LSA-C.C. Art. 2320, make it answerable for the negligence of Summage.
Plaintiffs contend (1) that T. L. James & Co., Inc., was the employer of not only Summage but of Felix G. Porta, Jr., and R. J. Flowers; (2) that Summage was, at least, a borrowed employee of James; and (3), in the alternative, that James is liable in contract for the damages allegedly sustained by plaintiffs.
Defendants contend that the relationship between Porta and James was one of vendor and vendee, and that Porta was the employer of both Flowers and Summage. Defendants further deny any liability, by virtue of James' contract with the Department of Highways of the State of Louisiana, for the performance of which it was engaged at the time plaintiffs allegedly sustained accidental injuries and damages.
Also made defendants were Flowers, Porta, and the latter's surety, National Union Indemnity Company, as well as Summage. Plaintiffs' demands were rejected as to Summage, as well as to these appellees, but sustained as to Flowers, Porta, and the latter's surety. The record reflects that, as to this judgment, a settlement was effected by plaintiffs with reservation of their rights against these appellees. No contest is presented as to the negligence of Henry Summage.
Plaintiff, Mrs. Thompson, in the family automobile, at about 7:40 a. m. October 6, 1958, was proceeding in a westerly direction on Pierremont Road in the City of Shreveport, when, on stopping in obedience to a red signal light at the intersection of Southern Avenue, her car was struck a severe blow from the rear by a Chevrolet dump truck loaded with dirt, driven by Summage. Summage was en route to deliver the load of dirt to the project then under construction by James.
The issues, being factual in nature, require a brief statement of the facts as established and disclosed by the record. T. L. James & Co., Inc., contracted with the Department of Highways to furnish all materials, equipment, and labor; and to build, construct, and complete a project on U. S. Highway 171, entitled Shreveport-Summer Grove Highway, consisting of 3.615 miles of concrete pavement, which project was known locally as Hearne Avenue Extension.
According to the plans and specifications, the work contracted included the installation of culverts and other drainage structures and the backfilling of the excavations made therefor. The principal excavation *229 to be backfilled consisted of a ditch of varying dimensions but from eight to ten feet deep, twelve to twenty feet wide, and three thousand feet in length. For the backfilling of this ditch, as well as for other appropriate purposes, James contracted with Porta for such dirt as needed for a price of $5 per load of five cubic yards, delivered.
Porta was engaged in the business of selling and delivering dirt from a location or pit in the Dixie Garden area of the City of Shreveport. He began this business in September, 1957, several months prior to his agreement with James. His customers included several contractors as well as the public generally. Prices varied dependent upon the distance for delivery and upon the quantity sold. The price, generally, for an individual load was $6 but, to contractors who ordered large quantities, $5 per load. For the operation of this location, or pit, Porta employed Flowers to operate the pit and load the trucks by means of a dragline and to make delivery of the dirt as ordered. Porta paid Flowers, for his services, $3.50 per load. Flowers employed Summage to drive Flowers' truck and paid him $1 per load for making the delivery. Similar arrangements were made by Flowers with other drivers. Porta paid the landowner for the dirt at the rate of forty cents per load. A record of the deliveries was made and retained by means of tickets, copies of which were furnished all parties concerned. A copy, with a receipt attached, was the basis of the billing, or invoice, by Porta to James for the amount of dirt delivered. The invoices included the State Sales Tax.
At the time of the aforesaid accident, Flowers was employed in the manner stated by Porta, and Summage was in Flowers' employ as a truck driver in the delivery of dirt to James.
The testimony is most convincing that the contract between Porta and James constituted a sale of dirt, and that the relationship between these parties was that of vendor and vendee. William S. Swindle, superintendent and project manager for James, testified that, acting for his employer, he purchased dirt for the aforesaid project from Porta at a price of $5 per load of five cubic yards delivered on the job. Identical was Porta's testimony. No right of control of Porta's or Flowers' trucks or employees was conferred by their agreement upon James and no control was exercised unless it could be said that the giving of information, or the signaling by the waving of the hand to the truck drivers where to dump, or deliver the dirt, on their arrival on the job, constituted control.
An agreement by which one gives a thing for a price in current money and the other gives the price in order to have the thing, itself, constitutes a contract of sale, and three circumstances concur in the perfection of the contract, namely: the thing sold, the price, and the consent. LSA-C.C. Art. 2439. These circumstances concur in the agreement between Porta and James and constitute a sale of the dirt, particularly in view of its actual delivery in accordance with the agreement.
A comparable, factual situation was presented in Smith v. Crossett Lumber Co., La.App.1954, 72 So.2d 895, wherein it was held that, where a producer of logs and pulpwood secured his own timber, hired his own employees, produced pulpwood, transported it to a railroad, and sold it to a third person who billed and shipped it to the lumber company, the relationship between the producer, on the one hand, and the third person and lumber company, on the other, was that of seller and buyers and not that of employee and employers.
Analogous to the factual situation in the instant case, were the facts presented in Taylor v. Employers Mut. Liability Ins. Co., 220 La. 995, 58 So.2d 206. There it was held that, where deceased, using his own equipment, delivered logs to sawmill under agreement whereby deceased was not required to deliver any definite quantity or quality of logs, and no definite time was *230 fixed for life of agreement, and the mill company, after the logs were accepted and scaled, paid stumpage price to owners of the trees directly and then paid balance of the price to deceased, relationship between deceased and the mill company was that of seller and purchaser, and not that of employer or employee or independent contractor within the Workmen's Compensation Actand hence deceased's death caused by logs falling from his truck was not compensable. LSA-R.S. 23:1021(6). The court further particularly pointed out that the lumber company was not paying the deceased for work done, but for the product delivered as the primary purpose of the lumber company, and its dealings with the deceased was to acquire logs which it needed in its business.
The purpose of T. L. James & Co., Inc., in its dealings with Porta, was to acquire the dirt, which it needed, for the project it had undertaken.
Moreover, the relationship of Henry Summage to T. L. James & Co., Inc., meets none of the tests accepted as determinative of an employer-employee relationship. General statements of the law, defining the status of the employer-employee, found in 99 C.J.S. Workmen's Compensation § 64, p. 268, and in 35 Am.Jur., page 445, "Master and Servant," § 3, enumerate certain primary evidentiary factors to be considered in determining that relationship. Among these are (1) the right or power to hire or discharge; (2) the fact, manner, or basis of payment; and (3) direction and control.
Discussing these factors in chronological order, it appears, from the evidence and testimony of Porta and of James' superintendent, that a contract of sale was entered into mutually beneficial to each of them, and there was neither right of selection nor engagement, nor right or power to discharge anyone, conferred upon the James company. Nor does the contract evidence any agreement for the payment of wages to anyone. The price contemplated was for the product delivered. The authority to select drivers for the vehicles delivering the product purchased or to dismiss or discharge them, as well as to fix and pay their wages was in Flowers or Porta, Flowers' principal, exclusively, and no power or authority concerning any of these factors was conferred upon T. L. James & Co., Inc. Nor was it even contemplated by the parties that any such authority would be exercised by James. Primarily, it would appear that the essence of the relationship is the right to control. And, as to this factor, as heretofore pointed out, no such right was conferred upon or exercised by James to any extent or degree.
It may be emphasized that, in our opinion, the mere suggestion of the purchaser, verbally or by signals to the drivers, where to make delivery did not constitute authoritative direction or control, but was merely suggestion as to details and constituted necessary cooperation with the seller of the products and his agents in making delivery; and, for this and the following reason, Summage cannot be deemed a borrowed employee. He performed no services beyond his employment with Flowers; he performed no services whatever for or under the control or authority of T. L. James & Co., Inc. C. W. Greeson Company v. Harnischfeger Corporation, 231 La. 934, 93 So.2d 221; Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137, and the authorities therein cited; Alexander v. J. E. Hixson & Sons Funeral Home, La.App.1950, 44 So.2d 487; Malone's "Louisiana Workmen's Compensation," page 61, § 57.
Among the cases cited and relied upon by plaintiffs is that of Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483. That case is distinguishable from the instant case on a factual basis. There it was held that a dump truck operator whom gravel pit operators hired to haul gravel on a per-yard basis under a contract terminable at will of either party and who was carried on the weekly payroll of the gravel pit operators, *231 who deducted a certain amount each week to cover workmen's compensation insurance, was an employee of the gravel pit operators who were liable for his negligence. Another feature of the contract was that the gravel pit operators carried public liability insurance, though they did not operate trucks of their own, and although the truck owner was not shown to have carried such insurance himself. Thus, it was assumed defendants intended to protect themselves against any liability incurred through the negligent acts of their truck drivers and other employees. The defendants did not only have the right to control and direct the work of the truck drivers, but actually exercised that right of control.
In the case of Malloy v. Buckner-Harmon Wood Contractors et al., La.App.1958, 100 So.2d 242, the holding that one Cedric Burns was an employee of the defendant was predicated largely upon the finding of not only the right to control but its actual exercise by the defendant. The case is thus distinguished where right of control was neither conferred nor exercised.
Lastly, plaintiffs contend that T. L. James & Co., Inc., and its surety are liable on contract by virtue of the provisions in the contract with the Department of Highways requiring that the contractor carry public liability and property damage insurance equal, at least, to the minimum specified in the contract and that, in the event any part of the work is sublet, similar insurance be required of the subcontractors to cover their operations. These requirements were made for the protection, use, and benefit of the principal in the contract, that is, the Department of Highways of the State of Louisiana.
Nor do we find these contractual provisions applicable where there is no statutory liability in tort imposed upon the contractor or upon the Department of Highways for whose protection the insurance requirement was made. We have been cited no authority, and our own search reveals none, where by these provisions of the contract impose upon the contractor any other, different, or greater liability than would otherwise be under the general provisions of the law relating to actions in tort, or to impose liability where none exists in tort.
For the reasons assigned, the judgment should be, and it is hereby, affirmed at appellants' cost.
Affirmed.