CULPEPPER, Judge.
In this suit plaintiff seeks to recover from LeBlanc Brothers, and their liability insurers, the total value of his fishing boat, which was allegedly damaged beyond repair when pushed by a bulldozer from a street in Cameron, Louisiana, where the boat had been left stranded by the receding waters of hurricane “Audrey”. The principal defense is that at the time of the alleged incident the operator of the bulldozer, although an employee of LeBlanc Brothers, was a borrowed servant or employee pro hac vice of the Louisiana State Police who were clearing the roads after the storm. From an adverse judgment plaintiff has appealed.
The record shows that on Thursday, June 27, 1957, a terrible hurricane, generally referred to as “Audrey”, struck the coastal areas of Louisiana and Texas with winds as high as 150 miles per hour and tides which flooded the area to depths of as much as thirteen feet. 467 persons were listed as dead or missing and property damage ran into the millions of dollars.
No useful purpose would be served by our reviewing the evidence because the trial judge has done this in a well considered written opinion, in which he found the pertinent facts to be as set out below.
A day or two after the storm, the defendant, LeBlanc Brothers, which was engaged in building a road between Hack-berry and Holly Beach, sent a bulldozer and some of its employees to Cameron to assist the authorities in whatever might be necessary. On Sunday at about 10 o’clock a. m.,. LeBlanc’s employee, Virgillio, was operating the bulldozer under the control and supervision of State Police Officer Joseph Rozas, when plaintiff’s boat was pushed from the blacktop surface of the street to the shoulder thereof, thereby damaging the boat. We adopt as our own the lower court’s conclusions of fact as follows :
“It is clear that at the time of the alleged incident the defendant’s bulldozer operator was acting under the supervision and control of the Louisiana State Police, who were then en *757 gaged in the performance of a pub-, lie service in an emergency situation. Certainly the operator was not performing any work of LeBlanc Brothers, nor did they in any way control or direct him in the performance of his tasks in Cameron. On the contrary, the action complained of by plaintiff was taken by the operator at the express direction of the Louisiana State Police while under their control, engaged in the performance of their business, or duty, to clear the highways and establish communications in a great emergency.”
Plaintiff and defendants agree that the applicable law of this state as to the doctrine of borrowed servants was quoted by the lower court from the case of Benoit v. Hunt Tool Company, 219 La. 380, 53 So.2d 137 as follows:
“It is a well settled principle of law that the master is liable for the torts of his servant committed in the scope and course of his employment, but it is often difficult where two possible masters are involved to determine which is liable for the tort, and to determine such liability we must look to the doctrine of the borrowed servant or employee pro hac vice. In determining liability under this doctrine in some cases the courts have imposed liability on the person in whose business the employee was engaged at the time the tort was committed. In others the test has been the right of control over the servant at the time the tort was committed. It has been pointed out that in applying the latter test it is often difficult to decide just what fact or facts constitute control. Mere division of control does not, in itself, raise the presumption of surrender of control, but there is a presumption that the general employer is liable, and it rests upon him to show that, as to the particular work in question, the servant has been lent and is performing only the borrower’s work, and that he was not the defendant’s servant at all. It has been said that even the control test is not an infallible one, and that the elements of each case must be taken into consideration. Where, however, it is clear that control by the defendant was coupled with performance for the defendant and in the defendant’s business, -the result is certain.”
Applying this statement of law to the facts of the instant case, we find that at the time plaintiff’s boat was damaged the bulldozer operator was both under the control of the State Police and was engaged in the business of the State Police. The operator therefore became the borrowed servant of the Louisiana State Police and the general employer, LeBlanc Brothers, was not responsible for his actions.
The fact that LeBlanc Brothers was sub-seqttently paid by Civil Defense Authorities, for their expense in furnishing the bulldozer and employees, does not change Virgillio’s status as a borrowed employee. B & G Crane Service v. Thomas W. Hooley & Sons, 227 La. 677, 80 So.2d 369; Miller v. B. Lewis Contractors, 103 So.2d 592 (1st Cir. La.App.1958).
The principal argument made by the plaintiff before this court is that the trial judge erred in his finding of fact as to the date and time plaintiff’s boat was damaged. Plaintiff contends that actually the boat was moved twice; first on Saturday morning about 10 o’clock a. m. when an unknown bulldozer operator, under the supervision of Trooper Rozas, moved the bow of the boat only a few feet, but not off the blacktop, to allow traffic to pass; second on Sunday at about 3 o’clock p. m. when Vir-ginio, acting entirely free of any supervision by the State Police, pushed the boat entirely off the blacktop surface of the road into the ditch, thereby causing the alleged damages. It is true that the testimony of plaintiff and certain of his witnesses is in conflict with the testimony of Trooper Rozas and Troop.er Barton, but the trial judge, who saw and heard the witnesses, *758 accepted the testimony of Trooper Rozas who stated positively that it was on Sunday morning about 10 o’clock he supervised personally the pushing of the boat entirely off the blacktop surface of the road onto the shoulder. We do not find the trial judge manifestly erroneous in this conclusion of fact, particularly since it involves, to some extent, the credibility of witnesses.
For the reasons assigned, the judgment appealed from is affirmed. All costs of this appeal are assessed against the plaintiff.
Affirmed.