165 So.2d 874 (1964)
Roy L. TRUITT
v.
B & G CRANE SERVICE, INC., and Aetna Casualty and Surety Company.
No. 1414.
Court of Appeal of Louisiana, Fourth Circuit.
June 1, 1964.
Rehearing Denied July 15, 1964.
Louis A. DiRosa, New Orleans, for plaintiff and appellant.
Adams & Reese, Richard C. Baldwin and Thomas J. Wyllie, New Orleans, for defendants and appellees.
Loeb & Livaudais and James E. Glancey, Jr., New Orleans, for intervenor and appellant.
Before McBRIDE, REGAN and YARRUT, JJ.
McBRIDE, Judge.
Plaintiff brought this suit against B & G Crane Service, Inc., and its liability insurer in solido for damages for personal *875 injuries sustained by him when he suffered a 50-foot fall from an iron truss beam on October 4, 1955, while working for Favrot & Fruin-Colnon, who were the general contractors engaged in constructing a plant for the National Gypsum Company in Westwego, Louisiana.
The undisputed cause of plaintiff's fall was his dislodgment from his perch by being struck by the jib boom of a crane which was being maneuvered to assist a fellow worker of plaintiff in another phase of the building operation. The crane was owned by the defendant B & G Crane Service, Inc., and plaintiff alleges that the accident was caused through the negligence of the crane operator, Emmett Presswood, whom plaintiff alleges was an employee of the B & G Crane Service, Inc., then working within the scope and course of his employment with said defendant.
The defendants answered admitting the alleged ownership of the crane but denying any negligence on the part of Presswood; defendants specially set forth the defense that B & G Crane Service, Inc., leased the crane and the operator to Favrot & Fruin-Colnon at a fixed price per hour and that the operator of the crane was at all times, including the time the accident occurred, under the direction and exclusive supervision and control of employees of Favrot & Fruin-Colnon and was an employee pro hac vice of said contracting firm in the performance of said construction work.
After a full trial in the court below, there was judgment in favor of defendants rejecting the plaintiff's claim, from which plaintiff has prosecuted this appeal. It might be stated here that New Amsterdam Casualty Company, the workmen's compensation insurer for Favrot & Fruin-Colnon, intervened and sought to recover from plaintiff, in the event of his success in the instant suit, the amount of workmen's compensation said intervenor had paid on behalf of Favrot & Fruin-Colnon. The intervenor has likewise appealed from the judgment dismissing plaintiff's suit.
A few minutes before the accident, the crane operator by means of a jib line had lifted plaintiff and placed him on the overhead truss. The operator then turned aside to carry out other duties and had completed hoisting a load of iron to another location when he was signalled by an iron worker located above the plaintiff to boom down and pick him up with the load line. In the endeavor of the operator to comply with such signal, the lowered boom struck plaintiff.
The method used in connection with the utilization of the crane in the construction job seems to have been the accepted, normal and customary method in the building trade. The construction work was performed by a "raising" gang. The raising gang was directed and controlled by a "pusher," an employee of the general contractor. His gang consisted of a "hooker on," a "tag man," and two "connectors," all employees of the general contractor; the operator of the crane and its oiler were also in the pusher's gang. The hooker on was the man who attached the cables around the beams on the ground and to the hook on the crane. The tag man had a rope attached to beams for the purpose of keeping them from unduly swaying and helping to guide a beam to its proper location. The connectors were up in the structure for the purpose of receiving beams and doing whatever was necessary to secure them in their proper position. While the steel was on the ground, directions were given to the crane operator by either the pusher or the hooker on. When materials were to be raised, the directions were transmitted by hand signals by the connectors. If there was necessity to move the crane, the directions were usually given by the pusher. At the time of the accident the orders were being given by the connectors and the boom brushed against plaintiff who apparently was not visible to the crane operator at the time. At any rate, *876 the crane operator was doing what he was told by the employees of the general contractor; the directions of the boom were also controlled by the tag man; all the crane operator did on the job was to follow instructions given by the general contractor's employees.
The general contractor in connection with its contract to erect the plant for National Gypsum Company required the use of certain truck cranes and entered into an agreement with the B & G Crane Service, Inc., in writing on July 1, 1955, for:

 "RENTAL OF THE FOLLOWING EQUIPMENT.
 1 - 12½ ton B & H Truck Crane w/60' boom
 w/20' jib $13.50 per hour
 1 - 20 ton B & H Truck Crane w/100' boom 16.00 per hour
 The above price includes:
 Oil, Fuel, supplies, Operator, Oiler, P/R taxes, P/L,
 P/D, and W/C Insurance. No travel time, permits, or
 maintenance to be charged to the buyer.
 Cranes shall be kept in A1 working condition. Pay to
 be based on actual time worked on job only."

It was one of the above-leased cranes in charge of the operator furnished by B & G Crane Service, Inc., that was involved in the accident.
Pretermitting any question of negligence on the part of Presswood, the sole issue for adjudication is whether the operator of the crane was at the time of the accident an employee of the B & G Crane Service, Inc., or whether he, under the borrowed servant doctrine prevailing in Louisiana, became an employee pro hac vice of the general contractor, Favrot & Fruin-Colnon.
In B & G Crane Service, Inc. v. Thomas W. Hooley & Sons, 227 La. 677, 80 So.2d 369, the Supreme Court said:
"The legal consequences flowing from the acts of an operator furnished with a leased machine are becoming increasingly important in view of the heavy machinery and equipment necessary for modern-day construction, and the broad principles of law governing the doctrine of borrowed servant or employee `pro hac vice' have been applied in situations that require a determination of which of two masters is liable for the acts of the operator furnished in connection with the leasing of such equipment. * * *"
The problem whether a workman is a borrowed employee or the employee of an independent contractor has been presented to the appellate courts of this state on many occasions and under varying circumstances; some of such cases are: B & G Crane Service, Inc. v. Thomas W. Hooley & Sons, supra; Amyx v. Henry & Hall, 227 La. 364, 79 So.2d 483; Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137; Beck v. Dubach Lumber Co., Limited, 171 La. 423, 131 So. 196; Kamm v. Morgan, La.App., 157 So.2d 118; Hebert v. Hartford Accident & Indemnity Company, 140 So.2d 755; McCutchen v. Fruge, 132 So.2d 917; Thompson v. National Surety Corporation, 124 So.2d 227; Miller v. B. Lewis Contractors, Inc., 103 So.2d 592 (certiorari denied); Malloy v. Buckner-Harmon Wood Contractors, 100 So.2d 242 (certiorari denied); Fontenot v. National Transfer Company, 99 So.2d 795 (certiorari denied); Dixie Machine, Welding & Metal Works, Inc. v. Boulet Transp. Co., La.App., 38 So.2d 546; Gallaher v. Ricketts, 187 So. 351 (decree recalled on other grounds, 191 So. *877 713); Davidson v. American Drug Stores, Inc., 175 So. 157; Merritt v. E. L. Bruce Co., La.App., 166 So. 195; Eames v. Alexandria Contracting Co., Inc., La.App., 154 So. 510.
In the cited cases varying tests have been laid down for determining whether a workman is to be denominated a borrowed servant, but it seems to be now well settled that the most important test to be applied in determining what is the status of the employee is to first find out who controls him in the work he is performing and more particularly who has the power and right to direct him in carrying out his work. In Benoit v. Hunt Tool Co., supra, the Supreme Court said:
"* * * Where, however, it is clear that control by the defendant was coupled with performance for the defendant and in the defendant's business, the result is certain."
In the instant case there is no question that the operators furnished by the lessor with the cranes were in the regular and general employ of the owner of said equipment, but the construction work was not that of B & G Crane Service, Inc., which had no interest whatever therein. The job was the general contractor's, the employer of plaintiff. All of the parties at the scene were involved in one common purpose, the construction of the National Gypsum plant, and Favrot & Fruin-Colnon was the only party obligated to do the work. The lessor of the crane and operator had no interest in the finished product, were not interested in how the construction work was done or in what period it was completed, or whether it was ever done or ever paid for. All the lessor of the crane and operator were interested in was the stipulated hourly rental for the two cranes; moreover, the contract for the rental thereof was such that either party, without breaching the contract, could have terminated it at any time.
The fact that Emmett Presswood was a regular employee of the B & G Crane Service, Inc., and was carried on its payroll and subject only to dismissal from his job by that organization does not have any effect on Presswood's status as a borrowed servant of the general contractor in the construction work. The question is not who can control his general employment but rather who controls his temporary employment. While the general contractor could not fire Presswood, it certainly could have dispensed with his services on the particular job by taking him off it or of ending the rental arrangement on his crane.
When the cranes were put to use in connection with the general contractor's project of erecting the structure, the operators of the cranes came under the absolute supervision and control of Favrot & Fruin-Colnon. The pusher or other employees of said general contractor controlled the crane operators' every movement, indicating to them what was required to be done, which materials were to be picked up or moved or hoisted, and in what order and where they were ultimately to be placed. All the operator did was to use his knowledge in operating the crane and to carry out orders emanating from the employees of the general contractor. The extent of the control exercised by the general contractor is best summarized by a statement in simple language made by the raising gang pusher:
"To the best of my knowledge, anybody renting a crane to somebody else, when they rent the crane out and when it hits the job, the people they rent it to take it over and its their baby."
From an analysis of the facts and circumstances of the case before us, it is perfectly obvious that (1) the work on which the crane was being used was the work of the general contractor; (2) the operator of the crane had to take and took orders from the general contractor's employees and merely carried them out; and (3) the method of erecting the building was entirely under the control of the general contractor, the lessor of the cranes and the operators having no *878 interest therein. Therefore, a holding that the alleged offending crane operator was the employee pro hac vice of Favrot & Fruin-Colnon is inescapable. Defendants are not liable for plaintiff's damages.
Plaintiff argues that by reason of the inclusion in the contract of the following language:
"13) The Seller (lessor) agrees to indemnify and save the Buyer (lessee), its agents and employees harmless (a) from any and all claims, suits and liability for infringement or violation of any patent or patent right arising in connection with this agreement or from the use by the Buyer of any of the materials furnished to it by the Seller; (b) From any and all claims, suits and liability for injuries to property or persons, including death, on account of any act or omission of the Seller or its officers, agents, employees and servants; (c) from any claim, damages and liability which shall or could be asserted by any employee of the Seller arising out of or connected with the materials furnished under this agreement; (d) from any and all claims, suits and liens for the materials furnished hereunder by persons other than the Seller."
it may be gleaned therefrom that the parties to the lease considered the crane operators to be the employees of B & G Crane Service, Inc., which was responsible for their acts. We think these indemnity clauses in the agreement merely restate the obligation which the law would perhaps require the B & G Crane Service, Inc., to fulfill even in the absence of such stipulations, and have no effect with regard to the status of the crane operator as a borrowed employee while working on the construction job carried on by the general contractor.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.